(No. 6760. October 24, 1940.)

HELEN CAROLINE LEBAK, CLARA MAY LEBAK and OSMOND LEBAK, Jr., the Minor Children of OSMOND LEBAK, Deceased, by L. R. LOOMIS, Their Guardian *Ad Litem* and Guardian of Their Estates; DEPARTMENT OF FINANCE OF THE STATE OF IDAHO, for and on Behalf of the State Insurance Fund of the State of Idaho, Respondents, v. OLOF NELSON, OLOF NELSON CONSTRUCTION COMPANY, a Corporation, and JAMES R. HODGEN, Appellants.

[107 Pac. (2d) 1054.]

Rehearing denied December 12, 1940.

Butler & Madden and H. J. Hull, for Appellants.

Durham & Hyatt and Edward T. Johnson, for Respondent Loomis.

Carroll F. Zapp and Clarence L. Hillman, for Respondent Department of Finance of the State of Idaho.

HOLDEN, J.—On the morning of April 2, 1937, one Mc-Cracken, an employee of the Idaho State Highway Department, was driving a combination tractor and grader on his lefthand side of the highway near Orofino, Idaho, grading and "smoothing" the highway. McCracken was operating the grader from inside a cab at the rear of the grader. Osmond Lebak, at the time of the accident, also an employee of the highway department, was walking at or near the righthand rear corner of the grader fixing a curtain. Claude Pippinger was driving a one and one-half ton Chevrolet truck (owned by Clearwater county) in the same direction the grader was being slowly driven. James R. Hodgen (accompanied by one Littledyke), an employee of Olof Nelson (contractor), driving a GMC six ton tank truck owned by Nelson, was following Pippinger. The Nelson truck swerved from behind the Pippinger truck and ran into the rear end of the grader—the impact of the Nelson truck against the grader and Lebak occurring when Pippinger reached a point on the righthand side of the highway about opposite or "pretty well to the front of the grader." Lebak was instantly killed. He

left surviving him three minor children, Helen Caroline, Clara May and Osmond Lebak, Jr., aged 10, 9 and 8 respectively. Lebak was a widower. Being employed by the Idaho State Highway Department, he was covered by state insurance under the Workmen's Compensation Act. December 18, 1937, the Industrial Accident Board made an award to the three minor children under the Workmen's Compensation Law.

Following the award, the minors, by L. R. Loomis, guardian *ad litem* and of their estates, joined by the Department of Finance of the State of Idaho for and in behalf of the State Insurance Fund, commenced this action to recover damages against Olof Nelson, Olof Nelson Construction Company, a corporation (Nelson having incorporated after the accident), James R. Hodgen and Claude Pippinger. Later, March 14, 1939, plaintiffs filed an amended complaint. The cause was tried upon the amended complaint, the answer of appellants, and the answer of Pippinger, commencing May 16, 1939. The jury returned a verdict in favor of plaintiffs and against appellants for the sum of $23,535. No verdict in any amount having been returned against defendant Pippinger, the trial court ordered and adjudged "that said plaintiffs take nothing from the said Claude Pippinger and judgment is hereby entered in his favor and against said plaintiffs." May 19, 1939, judgment was entered on the verdict against appellants from which judgment this appeal was prosecuted.

In the selection of the jury the trial court ruled plaintiffs were entitled to four peremptory challenges and defendants four, and if appellants and Pippinger were unable to join in the exercise of the four challenges, that appellants would have two and defendant Pippinger two. The ruling is assigned as error.

Section 7–202, I. C. A., provides:

"Either party may challenge the jurors, but where there are several parties on either side, they must join in a challenge before it can be made. The challenges are to individual jurors, and are either peremptory or for cause. Each party is entitled to four peremptory challenges. If no peremptory challenges are taken until the panel is full, they must be

taken by the parties alternately, commencing with the plaintiff.''

The above-quoted section was before us for construction in *United States v. Alexander et al.* (a civil case), 2 Ida. 386, 17 Pac. 746, decided in 1888. We said (p. 392):

''In impaneling the jury the defendants were restricted by the court to four peremptory challenges, and of this they complain. The number of peremptory challenges is fixed by the statute, which provides in civil cases that each party is entitled to four, and where there are several parties on either side, they must join in a challenge before it can be made. We do not think the legislature intended that, where there are several parties on either side, each individual should have four challenges, but that they should join, and have one set on either side.''

In construing a statute almost identical with section 7–202, *supra*, the Supreme Court of the State of Washington in *Colfax National Bank v. Davis Implement Company et al.*, 50 Wash. 92, 96 Pac. 823, 16 Ann. Cas. 264, held ''where the statute requires the several parties on either side to join in the challenge, the rule allowing parties appearing separately to interpose separate challenges cannot obtain,'' resting its decision on *United States v. Alexander, supra.* The California statute (sec. 601, Code Civ. Proc.), like the Washington statute, is also almost identical with our statute. In a case (*Muller et al. v. Hale,* 138 Cal. 163, 71 Pac. 81), where, as in the case at bar, there were several defendants, the California Supreme Court held, as this court held in the Alexander case, *supra*, defendants must join in a challenge before it can be made. And in *Switzler v. Atchison, T. & S. F. Ry. Co. et al.*, 104 Cal. App. 138, 285 Pac. 918, 924, the court said:

''We think the rule is well established in California and in other states having similar statutes or code provisions, that section 601 of the Code of Civil Procedure must be so construed as to require all of the defendants to join in the four peremptory challenges.''

To the same effect: *National Sanitary Rag Co. v. Lawrence et al.*, 33 Cal. App. (2d) 198, 91 Pac. (2d) 120.

After respondents rested appellants called, as an adverse party, their co-defendant, Pippinger, for cross-examina-

tion under the statute (sec. 16–1206, I. C. A.). Respondents objected. The trial court ruled: "I am going to deny to allow you the privilege of cross-examining the witness [Pippinger] under the statute." On appeal to this court appellants assigned that ruling of the trial court as error. After the appeal, to wit, April 15, 1940, Pippinger moved, upon various grounds, to dismiss the appeal as to him. The motion was heard at our June, 1940, term at Lewiston. Upon the hearing, counsel for respondents and appellants were asked if they desired to oppose the motion, and replied they did not, whereupon it was ordered the appeal "so far as it may affect Claude Pippinger, respondent herein, be and the same is hereby dismissed."

June 29, 1940, this court requested counsel for appellants and respondents to brief three questions touching the legal effect, if any, Pippinger's dismissal worked upon appellants' assignment that the trial court erred in denying them the privilege of cross-examining Pippinger as an adverse party under the statute.

On the question as to whether Pippinger, having been dismissed, is still an adverse party, "the appellants' position is that he will neither be adverse to either plaintiffs or these appealing defendants . . . . " And on the question as to whether, in the event a new trial was granted, Pippinger could be called as an adverse witness "it is appellants' position that he will have no interest in the outcome of the action, either in resisting plaintiffs' claims, or in establishing Hodgen's negligence to protect himself, and that therefore he will not be an *adverse* party, either so far as plaintiffs are concerned, or so far as these appealing defendants are concerned . . . . "

Pippinger is no longer a party to this action, adverse or otherwise. If we reversed the judgment and granted a new trial, appellants could not, therefore (as apparently conceded), call him as an adverse party for cross-examination under the statute. Appellants are in a position somewhat analogous to that of one who invites error in that they not only failed to appeal from the judgment entered in favor of Pippinger but acquiesced in his dismissal, and thus made it impossible for this court, even though it granted a new

trial, to restore the right of cross-examination to appellants, assuming appellants were entitled to call Pippinger for cross-examination. The question as to whether the trial court erred in denying appellants the privilege of cross-examining Pippinger as an adverse party under the statute has, by reason of his dismissal, become moot. It is well settled this court will not determine a moot question. (*Jorgenson v. George,* 56 Ida. 81, 84, 85, 50 Pac. (2d) 1; *Stockyards National Bank v. Arthur,* 45 Ida. 333, 262 Pac. 510; *Chicago M. & St. P. Ry. Co. v. Cardwell,* 42 Ida. 25, 242 Pac. 977; *Graves v. Berry,* 35 Ida. 498, 207 Pac. 718; *Abels v. Turner Trust Co.,* 31 Ida. 777, 176 Pac. 884; *Coburn v. Thornton,* 30 Ida. 347, 164 Pac. 1012; *Roberts v. Kartzke,* 18 Ida. 552, 111 Pac. 1; *Porter v. Speno,* 13 Ida. 600, 92 Pac. 367; *City of Wallace v. Deane,* 8 Ida. 344, 69 Pac. 62; *Wilson v. Boise City,* 7 Ida. 69, 60 Pac. 84.)

The record shows that on cross-examination defendant Hodgen was asked:

Q. "You were convicted of forgery?

A. Yes."

On redirect examination appellant's counsel inquired:

Q. "Counsel asked if you had been convicted of a felony, will you explain?"

Plaintiffs' counsel objected and the court sustained the objection, whereupon counsel offered to prove the circumstances under which Hodgen was convicted, to which offer counsel for plaintiffs also objected. The court sustained the objection and rejected the offer. It is contended the court, under section 16–201, I. C. A., should have permitted Hodgen to explain. That section provides:

"All persons, without exception, otherwise than is specified in the next two sections, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses. Therefore, neither parties nor other persons who have an interest in the event of an action or proceeding are excluded; nor those who have been convicted of crime; nor persons on account of their opinions on matters of religious belief; although in every case the credibility of the witness may be drawn in question, by the manner in which he testifies, by the character of his testimony, or by

evidence affecting his character for truth, honesty or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.''

The purpose of the enactment of the statute is stated in *Pierstorff v. Gray's Auto Shop,* 58 Ida. 438, 447, 74 Pac. (2d) 171, to be ''to remove all common law disqualifications, except those expressly retained.'' But for the provisions of section 16–201, *supra,* Hodgen, having been convicted of a felony, could not have testified at all. Surely, it cannot reasonably be contended the legislature not only intended to remove the common-law disability of one convicted of a felony, but further intended to permit him to explain his conviction if interrogated about the matter while on the witness stand in another and entirely different action. An inquiry into a collateral matter which has been judicially disposed of will not be permitted. (*State v. Keillor,* 50 N. D. 728, 197 N. W. 859; *Kendrick v. Cunningham,* 9 Ala. App. 398, 63 So. 797.)

Appellants contend the acceptance of compensation by the Lebak children ''operated as an assignment of their entire cause of action to the State Insurance Fund, and divested them of any right to institute or prosecute this action.'' In other words, it is contended respondents cannot accept compensation under our Workmen's Compensation Law and then prosecute an action against them (third parties) to recover such damages as a jury might award, subject to reimbursing the State Insurance Fund. As stated in *Moseley v. Lily Ice Cream Company,* 38 Ariz. 417, 300 Pac. 958, 959, 960:

''A similar situation has arisen in a great many jurisdictions in the United States, and has been solved in varying ways, depending upon the exact language of the statute covering the question. Apparently these statutes may be divided into three classes. The first includes those where the express right is given to the employee to recover compensation and also to sue the third party for negligence. Typical of such statutes are those of New Jersey, Kansas, California, and Iowa, and the decisions in these and other states with like statutes hold accordingly that acceptance of compensation

does not defeat the right of the injured employee to bring a suit against such third party. [Citing cases.]

"The second class of statutes does not expressly give the employee the right to recover compensation and to sue the third party, but provides that, if compensation is paid, the employer is subrogated to the rights of the employee so far as the amount which he has paid is concerned, but that any surplus he may recover is to go to the injured employee. In these states it is generally held that the right of action against the third party still exists, notwithstanding compensation has been paid, and that in some way or another, either by bringing suit in the name of the employer or in his own name, the employee may maintain the action. Typical of these states is Texas. [Citing cases.]

"The third class of statutes provides that if the employee elects to bring suit against the third person and his recovery is less than that granted by the Compensation Act, the insurance fund shall make up the difference, but that if the employee elects to take compensation, the awarding of compensation shall act as an assignment of the cause of action to the state for the benefit of the insurance fund, or other insurer. In these states acceptance of compensation bars any action against the third person by or on behalf of the employee. Typical statutes are those of New York, Oregon and Oklahoma." [Citing cases.]

In the case at bar appellants strongly rely upon *Workmen's Compensation Exchange et al. v. Chicago, Milwaukee, St. P. & P. R. Co.* (District Court, District of Idaho), 45 Fed. (2d) 885, and *Tandsetter v. Oscarson,* 56 N. D. 392, 217 N. W. 660. In the Workmen's Compensation Exchange case, *supra,* the court rested its decision (without reviewing the authorities, which apparently were not called to the attention of the court) upon the Tandsetter case. In the latter case the North Dakota Supreme Court construed the Workmen's Compensation Act of that state. In paragraph "H" it is declared to be the intent of the "act to restore to industry those injured in the course of employment. The bureau shall accordingly assist industrial cripples to attain appropriate training, education and employment, and may co-operate with the federal board of vocational education for this purpose."

Discussing the above-quoted provisions of the statute, the North Dakota court said:

"It seems to be the intent of the law to retain jurisdiction over the injured not only until compensation is paid, but continuously for the purpose of assisting, educating, and restoring to industry those injured in the course of employment."

The North Dakota statute, it will be noted, in effect, makes the injured workman a ward of the state, assisting and educating him "not only until compensation is paid, but continuously" until he is fully trained and ready to re-enter the ranks of industry, as stressed by the North Dakota court. Our statute makes no provision for educating and training an injured workman, either until he is restored to industry, or at all. Under our statute he is awarded compensation—not intended to fully compensate him and with no thought of educating and training him. It must be conceded, then, these statutes (North Dakota and Idaho) are very substantially different.

Respondents contend our "Workmen's Compensation Law covers and defines only the rights and remedies between employee and employer, and neither adds to nor diminishes the rights of an employee injured by a third person," insisting "the cause of action against the third party in effect is owned jointly by the heirs of the deceased employee and his employer, or in case compensation has been paid the employer's insurance carrier," citing *Athens Ry. & Electric Co. v. Kinney,* 160 Ga. 1, 127 S. E. 290, 292; *Schnick v. Morris,* (Tex. Civ. App.) 24 S. W. (2d) 491, 497; *Chesapeake & Ohio Ry. Co. v. Palmer,* 149 Va. 560, 140 S. E. 831, 836; *Thomas v. Otis Elevator Company,* 103 Neb. 401, 172 N. W. 53, 54; *Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784, 786, and excerpting therefrom as follows:

*Athens Ry. & Electric Co. v. Kinney:*

"The provision in this section of the act, that the rights and remedies granted to an employee 'shall exclude all other rights of such employee, . . . . at common law or otherwise,' uses language that is very broad, and which on its face would seem to exclude the right of plaintiff in this case, after accepting the award under the provisions of the

Act of 1920, to maintain a suit based upon the negligent and tortious killing of her husband, even though the negligence which resulted in the husband's death was negligence upon the part of a tortfeasor other than the employer of the decedent. But upon a consideration of the language last quoted in connection with the entire act, and with regard to the purposes of the act; we have reached the conclusion that that provision, while it excludes 'all other rights and remedies of such employee, his personal representative,' etc., and while the expression, 'all other rights,' is general and unqualified by the immediate context, it is applicable only to such rights or remedies as the plaintiff would have had against the employer of her husband, independently of the law embraced in the Workmen's Compensation Act and the provisions of that law. But we can find no reason in that law for holding that as to a third party, who was a tort-feasor and whose negligence resulted in the death of the husband of the plaintiff, she should be deprived of her right under the law allowing her, under the circumstances set forth in this case, to sue for and recover the full value of her husband's life. One of the purposes of the act, as shown by the caption, is 'to establish rates of compensation for personal injuries or death sustained by employees in the course of employment.' If, under the act, a widow suing under its provisions were given the right to recover as compensation the full value of the life of the deceased husband, we should hold, of course, that the recovery of that compensation excluded all right to recover further compensation against any person. But the Workmen's Compensation Act does not make provision for the recovery of the full value of a life destroyed by negligence or otherwise. In one respect this act is intended for the protection of employers as well as for the benefit of employees. It puts a limit upon the amount that may be recovered for injuries to or death of one of its employees that may be far less than the actual value of the life destroyed. And of course the act is also for the benefit of employees who may be injured in the course of their employment, because it authorizes recovery under the terms of the act where, under our statutes prior to this act and under the common law, there could have been no recovery for injury to or death of

the employee. But there is no reason for holding that, if another corporation or person other than the employer is guilty of negligence which results in injury or death, such corporation or person should have the benefit of the act which establishes the rate of compensation for injury to an employee as against an employer, where the employer and employee have accepted the provisions of the Workmen's Compensation Act.''

*Schnick v. Morris:*

'' . . . . But appellant says the right of the indemnifying association is absolute. Under the statute it has an absolute right to institute suit, but such right is not exclusive. The cause of action is jointly owned by the injured employee or his beneficiaries, and the insurance carrier. The right of the insurer to be subrogated to the rights of the injured employee is for the insurer's benefit to the extent only of the sums paid by it to the injured employee or his beneficiaries, while the excess of any recovery had in such suit against the negligent third party is for the benefit of the injured employee and his beneficiaries.''

*Chesapeake & Ohio Ry. Co. v. Palmer:*

''It soon became apparent that an employer might be mulcted in compensation who was nowise at fault. The right of the employee to sue the wrongdoer had not been affected, and it was then possible for him to duplicate his recovery and to secure damages from two sources. Such a situation called for relief, it was given in the amendment in 1920, and written into the second paragraph of section 12. It gave to the employer the right to recover from the wrongdoer whatever he had actually had to pay, and it took from the employee the right *pro tanto* to a double recovery, but beyond this it left the employee's right to recover as it was before.''

*Thomas v. Otis Elevator Company:*

''The first complaint made is, that the plaintiff had no right to bring the action in his own name under section 3659, Rev. Stats. 1913. In *Muncaster v. Graham Ice Cream Co.,* ([103] Neb. [379]), 172 N. W. 52, it was decided that the statute did not take away the right of the employee to recover damages against a third person when the relation of master and servant does not exist; that the section was de-

signed for the protection of an employer who had paid the compensation; that, if the employer's rights were protected, it was no concern of the negligent third party."

*Moeser v. Shunk:*

"The statute does not attempt in any way to determine the rights or liabilities of the employee in respect to a person not his employer. It does not repeal the statute providing for an action for wrongful death . . . . , nor does it take away from an employee his common-law right of action for injury to the person against one not his employer who by negligence has caused the death or injury. When one not the employer causes injury to a workman, it is really none of his concern whether the person injured has an estate, or has life insurance, or accident insurance, nor what his contract of employment may be with his employer; these things neither increase nor decrease his liability. To hold otherwise would, in a sense, be to license reckless persons negligently to injure an employee working under the Compensation Act, without liability, though a similar injury to another person would create liability."

Due to varying language of workmen's compensation statutes there is much contrariety of judicial opinion (as indicated in *Moseley v. Lily Ice Cream Co., supra*), as to whether acceptance of compensation operates to bar the prosecution of an action by an injured employee, or his dependents, to recover damages against a third party. We refer the interested reader to [*Gones v. Fisher*, 286 Ill. 606, 122 N. E. 95], 19 A. L. R. 766; [*O'Brien v. Chicago City R. Co.*, 305 Ill. 244, 137 N. E. 214], 27 A. L. R. 493; [*Rentenik v. Gibson Packing Co.*, 132 Wash. 108, 231 Pac. 773], 37 A. L. R. [830], 838; [*Foster v. Congress Square Hotel Co.*, 128 Me. 50, 145 Atl. 400], 67 A. L. R. 249; [*Brainard's C. Dairy v. Industrial Com.*, 80 Utah 159, 14 Pac. (2d) 212], 88 A. L. R. 665; and [*McGraw v. Siegel*, 221 Iowa, 127, 263 N. W. 553], 106 A. L. R. 1040, where the cases are collected and analyzed.

Whether our legislature intended the acceptance of compensation should operate as a bar to the prosecution of an action for damages against a third party depends upon the construction of sections 43–902 and 43–1004 (Workmen's

Compensation Act), I. C. A., which, being *in pari materia,* must be considered and construed together.

The legislature, by section 43-902, *supra,* states the reasons which moved it to enact the Workmen's Compensation Law, and its purpose. In substance, they are: That "the common law system governing the remedy of workmen against employers for injuries received in industrial and public work is inconsistent with modern industrial conditions"; "the administration of the common law system in such cases has produced the result that little of the cost to the employer has reached the injured workman, and that little at large expense to the public"; "the remedy of the workman has been uncertain, slow and inadequate"; "injuries in such employments formerly occasional have become frequent and inevitable"; "the welfare of the state depends upon its industries, and even more upon the welfare of its wage-workers"; "the state of Idaho, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy" in order that "sure and certain relief for injured workmen and their families and dependents" be "provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation"; and to accomplish that end "all civil actions and civil causes of action for such personal injuries, and all jurisdiction of the courts of the state over such causes are hereby abolished."

What common law remedy only was thereby intended to be abolished? The statute answers: "The remedy of workmen against *employers* for injuries received in industrial and public work" (italics ours). And why was the common law remedy of the worker for personal injuries against his *employer* abolished? Again the statute answers: Because "the remedy of the workman has been uncertain, slow and inadequate." The provisions of the statute are expressly confined to those occupying the relationship of employee and employer. The relationship of employee and employer never existed between Lebak and appellants. Hence, the legislature could not have intended, and clearly did not intend, to protect appellants, strangers to the required relationship, from the

prosecution of an action to recover damages for their actionable negligence.

Section 43–1004, *supra,* provides:

''When an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person: provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action.''

It must be constantly kept in mind the common law action of an *employee against a third person* to recover damages for *personal injuries* sustained by reason of actionable negligence of such third party *was not abolished;* therefore, such cause of action would still belong to the injured workman, if he survives his injury, and to his widow (if any) and dependents (if any) if he does not. Under the statute, when an employee is injured under circumstances which make his injury compensable and at the same time creates ''in some other person than the employer a legal liability to pay damages,'' and he claims compensation, then his employer, if he has either paid the compensation or become liable to pay it, is subrogated to the right of the injured employee to recover whatever he (the employer) has paid or become liable to pay.

It will be observed, however, the statute does not require an employer to prosecute. It simply gives him the privilege of prosecuting such action. He may exercise it or not, as he chooses. If the privilege is exercised, subrogation extends only to the precise amount he has paid or become liable to pay, which amount is the limit of the employer's actual interest in the litigation—the excess recovered, less expenses

and costs, must be paid to the injured employee or his dependents. It becomes clear, then, the legislature merely intended to give the employer the equity status of a subrogee, not to abolish the common law action of an employee against a third party—that action must be preserved to enable the employer to prosecute, in that the employer has not suffered personal injuries because of the negligence of the third party (if he had he would not need to be subrogated); therefore, if and when the employer prosecutes, he must necessarily prosecute the employee's cause of action, in which employee and employer have a joint, contingent interest. The employee is a proper, though not a necessary, party to such an action.

The Workmen's Compensation Law was not intended to fully compensate a workman for injuries sustained but to provide quick, ''sure and certain relief for injured workmen and their families and dependents'' regardless of ''questions of fault.'' The legislature recognized instances would arise in which the compensation paid by the employer would not fully cover the actual damages suffered by the injured workman, *by requiring the employer to pay the employee any excess recovered,* less his ''costs and expenses.'' But suppose the employer does not choose to exercise the privilege given him by the statute, either because he doesn't care to or by reason of collusion with the wrongdoer. Could either failure of the employer to exercise his privilege, or connivance with the wrongdoer, operate to bar the injured workman from prosecuting his own cause of action to recover damages for his own injuries? Such a construction of the statute would work a gross injustice to the injured workman, and we cannot attribute such an intention to the legislature.

■ It is further contended the court erred in denying appellants' motion to dismiss the Department of Finance. The motion was made upon the ground the Department was improperly joined as a party plaintiff. Section 5–312, I. C. A., expressly provides:

''All persons having an interest in the subject of the action, and in obtaining relief demanded, may be joined as plaintiffs : . . . ''

The Department had a substantial interest, as subrogee, in the subject of the action; it was, therefore, properly joined.

It is also contended the court erred in failing "to instruct [Instruction No. 18] the jury that if they found from the evidence that the actions of the Pippinger truck created an emergency which confronted Hodgen, and required him to make an instant election as to whether to proceed ahead and into the rear of the Pippinger truck, turn to the left or right, that Hodgen could not be charged with negligence, and wholly failed to permit the jury to determine the question as a fact."

The record discloses at the time of the accident the grader was being slowly driven in an easterly direction on the north and the driver's lefthand side of the highway; that Pippinger was driving on the south and his righthand side in the same direction; that Hodgen was following Pippinger on the south and his righthand side of the highway; that when Pippinger suddenly applied his brakes and came to a stop opposite the grader, he (Hodgen) turned to his left, ran into the grader and killed Lebak.

Briefly, as we understand appellants, they contend: If Pippinger, when he applied his brakes as he reached a point opposite the grader, created a sudden emergency which required Hodgen to make an instant election whether to proceed ahead and into the rear of the Pippinger truck, or turn to the left or right, Hodgen could not be charged with negligence, and further that such instruction failed to permit the jury to determine, whether, as a matter of fact, Hodgen was confronted with a sudden emergency requiring him to make an instant election, it being argued "that if they [the jury] found he [Hodgen] was not negligent, they could excuse his action on the ground of an emergency." Boiled down, then, it is appellants' contention the court erred in failing to instruct the jury if they found Hodgen was confronted with a sudden emergency, "they could excuse his actions" in turning to the left and striking Lebak, instead of driving straight ahead or turning to his right. In other words, the existence of a sudden emergency, in and of itself, would excuse Hodgen, and the court should have so instructed the jury.

By instruction No. 18 the court instructed the jury that appellants ''claim Hodgen was confronted with a situation of sudden emergency, requiring him to instantly act without an opportunity for calm deliberation,'' and, further, that ''even though you find the defendant was confronted with a sudden emergency [obviously submitting that question of fact to the jury] that he must have acted with the same care and prudence in such a situation that any ordinary, prudent man would have acted under the same or similar circumstances.''

This court held in *McCoy v. Krengel,* 52 Ida. 626, 632, 17 Pac. (2d) 547, that whether or not one driving a car on the wrong side of a road ''was guilty of negligence in taking the course he pursued is dependent upon whether he acted in a reasonably prudent manner.'' And in *Stuart v. McVey,* 59 Ida. 740, 747, 87 Pac. (2d) 446, this court cited and approved *McCoy v. Krengel, supra,* saying:

''Whether or not one is guilty of negligence in taking the course he pursued is dependent upon whether or not under the circumstances he acted in a reasonably prudent manner.''

Appellants contend the verdict ($23,535) ''was excessive and must have been the result of passion and prejudice.'' There is nothing in the record to indicate either passion or prejudice unless it be the amount of the verdict. Lebak was 36 years 6 months old at the time of his death. He had a life expectancy of 31.7 years. He was able-bodied, in good health and industrious and had been employed by the state since 1930, being so employed at the time of his death, earning 55¢ an hour. He was not restricted to any number of hours per week, and many times worked at night. Therefore, during his life expectancy he would have earned an amount greatly in excess of the amount of the verdict. Each of the children lost the love, care, direction, counsel, education and support of the father. Breaking the verdict down into three parts, each child received less than $7,850. Section 5–311, I. C. A., provides:

''When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; . . . . In every action

under this ·. . . . section, such damages may be given as under all the circumstances of the case may be ·just.''

In *Anderson v. Great Northern Railway Company*, 15 Ida. 513, 522, 99 Pac. 91, we quoted with approval from *Tilley v. Hudson River R. Co.*, 29 N. Y. 257, 86 Am. Dec. 297, as follows:

''A liberal scope was designedly left for the action of the jury. They are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injury resulting from such death. They are not tied down to any precise rule. Within the limit of the statute as to the amount, and the species of injury sustained, the matter is to be submitted to their sound judgment and discretion. They must be satisfied that pecuniary injury resulted. If so satisfied, they are at liberty to allow them from whatever source they actually proceeded which could produce them.''

See also: *Geist v. Moore*, 58 Ida. 149, 70 Pac. (2d) 403.

 It is complained, and with good reason, the admission in evidence of a certified copy of the policy of insurance, the summary of the award by the Industrial Accident Board, and the compensation agreement signed by guardian L. R. Loomis and Lebak's employer, awarding compensation to the three minor children, was prejudicial to appellants. These documents were offered and admitted in evidence for the purpose of showing compensation had been awarded by the Industrial Accident Board, but there was no occasion for considering either the amount of compensation or costs until after the verdict had been returned· for an amount greater than both. Where a verdict is for a greater sum than has been incurred or paid out by the employer and insurance carrier, then the court may and should order and direct payment to the employer and insurance carrier of the amount incurred and paid out by them to the employee or dependents, as the case may be. When the parties cannot agree upon the amount incurred and paid out by the employer and insurance carrier, an application should be made, supported, for instance, by a certified copy of the policy of insurance, the summary of the award by the Industrial Accident Board, and compensation agreement. While there is also much contrariety of ·judicial ·opinion on this subject, it seems the

better reason supports the rule above stated (60 C. J. 824, sec. 125).

It follows the judgment appealed from must be reversed, and a new trial granted, and it is so ordered. Costs awarded to appellants.

Ailshie, C. J., concurs.

BUDGE, J., Dissenting and Concurring.—I dissent from that part of the majority opinion wherein it is held that: "The question as to whether the trial court erred in denying appellants the privilege of cross-examining Pippinger as an adverse party under the statute has, by reason of his dismissal, become moot." The fact that the appeal as to Pippinger was dismissed did not cure error if error was committed by the trial court in refusing to permit cross-examination of Pippinger under the statute as an adverse party. This court should decide the question, namely: Whether or not the trial court erred in refusing to permit the codefendant to call Pippinger for cross-examination under the statute.

I concur in the reversal of the judgment for the reason that: "the admission in evidence of a certified copy of the policy of insurance, the summary of the award by the Industrial Accident Board, and the compensation agreement signed by guardian L. R. Loomis and Lebak's employer, awarding compensation to the three minor children, was prejudicial," it having been recently held in *Department of Finance of State v. Union Pac. R. Co.*, 61 Ida. 484, 104 Pac. (2d) 1110, 1117, that:

"Under the statute above quoted [Section 43–1004, I. C. A.] the liability or amount of liability of the tort-feasor is not dependent upon the amount of compensation awarded or the fact that compensation has been awarded the injured employee. . . . . Neither recovery nor the amount of damages recoverable from appellants is controlled or fixed in any way by the amount of the award made by the board, but is based upon the damages sustained by reason of negligence of appellants."

GIVENS, J.—I concur, except that my concurrence in reversal is rather on the ground that the error in refusing to permit the cross-examination under the statute of Pippinger has not become moot, than on the ground it was reversible error, in view of Instruction No. 21[1], to admit in evidence before the jury the record of the award made by the Industrial Accident Board. However, I concur that the procedure outlined in the opinion as to this particular is correct.

Morgan, J., deeming himself disqualified, did not sit at the hearing or participate in the decision.

### ON PETITION FOR REHEARING.

(December 12, 1940.)

AILSHIE, C. J.—A petition for rehearing, accompanied by an elaborate brief, has been filed in this case. The petition is predicated on the sole contention that the court erred in reaching the following conclusion:

" . . . . the admission in evidence of a certified copy of the policy of insurance, the summary of the award by the Industrial Accident Board, and the Compensation Agreement signed by guardian L. R. Loomis and Lebak's employer awarding compensation to the three minor children, was prejudicial to the appellants."

Since respondent's contention raises not only the question of procedure but an issue as to the substantive law under section 43–1004, I. C. A., we deem it proper to make some further observations on the specific issue raised. The statute says that,

"When an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability

---

[1] "You are further instructed that in arriving at and assessing damages, if you find for the plaintiffs, that it is immaterial in this case that said minors *has* received and are receiving or will receive compensation under the Workmens' Compensation laws of the State of Idaho for the death of their father."

to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person: provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action.''

It must be remembered that the Workmen's Compensation Law is a remedial and special law providing compensation for injured employees, without reference to any question of negligence, either on the part of the employer or employee. Consequently, an award made to a workman under this act bears no relation whatever to any negligence on the part of the employer, a stranger or anyone else. When an award is made under this act in favor of an employee, and liability attaches in favor of the employer or insurance carrier, or both, the statute at once confers upon such employer or insurance carrier, or both, a right of action against any third party who may have caused or wrongfully contributed to the injury of the employee.

The statute does not attempt to take away from the workman his right of action against a third party for any tort that may be committed against him by such person or persons. An action prosecuted against a third party or tort feasor must necessarily rest upon the law of negligence and be tried to a jury the same as any other action for negligence. To introduce the record and award by the Industrial Accident Board, awarding compensation under the Workmen's Compensation Act, as evidence against a third party, might become very prejudicial and strongly tend to lead a jury to the conclusion that an injury and wrong had been committed, and that the defendant is liable therefor, or, on the contrary, it might prejudice the plaintiffs' case by the thought that the employee had already been compensated.

■ On the other hand, the jury in such trial have nothing to do with the question as to whether or not the employee has sought and recovered compensation under the compensation act. It is true that it is necessary for an employer or insurance carrier to allege such fact in order to state a cause of action under the subrogation statute. But that allegation is necessary only for the purpose of showing that he or it is a proper party plaintiff in the action. If the allegation is admitted, there is no occasion for any proof to the court. If the allegation is denied, then that· is a proper matter to be determined by the court before entering upon the trial to the jury. It is a question of law to be determined by the court, as to whether subrogation arises and not a question for the consideration of the jury.

■ In such cases as this, it will be proper for the court to inform the jury by appropriate instruction that the employer and insurance carrier appear as, and are, proper parties plaintiff because of the fact that they have been legally subrogated to the rights of the employee or his beneficiaries, because of their liability to pay benefits under the Workmen's Compensation Act; and that the jury will have nothing to do with the question as to any sum or amount such plaintiffs may be liable for under the compensation act. They should be further advised that liability, under the compensation act, is not dependent on negligence, whereas, the present action is for negligence and that the duty of the jury is simply to determine whether or not the defendant was guilty or innocent of negligence; and if they determine that he was guilty of negligence, then fix the amount of damages they think proper to award under the instructions. If after the trial it appears that a verdict has been obtained for more than plaintiff has paid or become liable for, it will then become the duty of the court to prorate the judgment under the statute between the employer, insurance carrier and employee.

Petition for rehearing is denied.

Budge and Holden, JJ., concur.

GIVENS, J., on Petition for Rehearing.—I concur as to the procedure indicated being correct, otherwise I adhere to my views heretofore expressed.