(No. 7277. April 24, 1946.)

BETTY JO MOSER, Claimant and Respondent, v. UTAH
OIL REFINING COMPANY, a corporation, and JAMES
LEESE, Defendants and Appellants, and AMERICAN
EMPLOYERS INSURANCE COMPANY, a corporation,
Surety, Defendant.

[168 P. (2d) 591.]

Burton W. Musser, Oscar W. Worthwine, and J. T.
Hammond, Jr., for appellant Utah Oil Refining Company.

Finis Bentley for appellant James Leese.

F. E. Tydeman for respondent.

GIVENS, J.—Respondent secured a compensation award for the death of her husband as caused by an industrial accident, against appellants, who, by their appeal contend he was the employee of only appellant Leese and that respondent has not shown appellants were not prejudiced by failure of respondent to notify them of the accident within sixty days of its occurrence.

Appellant Oil Company owns a plant consisting of buildings, tanks and appropriate equipment for the storage and distribution of oil and petroleum products in Pocatello, Idaho.

Appellants contend Leese was an independent lessee or distributor, and that appellant Oil Company had nothing to do with the employment of deceased. The appellant Insurance Company was the insurance carrier for the Oil Company.

The agreement between the Company and Leese, in part, provides:

"THAT, WHEREAS, Company has leased to or sublet to or permitted party of the second part to occupy and use for the limited purposes hereinafter contained, the following described tract of land situate in the City of Pocatello, County of Bannock, State of Idaho, to-wit:"

describing the real estate upon which the buildings, fixtures, equipment, machinery and appliances owned by appellant Company, were situated.

\*　\*　\*　\*

"2.　Party of second part (Leese) agrees:

"(a)　To act for Company in the sale and distribution of gasoline, kerosene, lubricating oils and other petroleum products, tires, batteries and other merchandise manufactured, sold, handled or otherwise dealt in by Company in that territory within the State of Idaho, described as follows:" \* \* \* (designating Leese's trade territory in Bannock County area) \* \* \*

"(a-1)　To act for the company in the storing, handling and transferring of storehouse supplies to other plants and for service stations of the company as directed by the company.

"(b)　To use his best endeavors to sell and promote the sale of such products of Company as may be in his custody within the territory above described". \* \* \*

Then were included inventories of the equipment and appliances delegated.

Leese was to carry workmen's compensation insurance, which, though then required by the contract and the statutes if he were an independent agent, nevertheless, he did not do. Further—

"(7)  *  *  *  *

Company is specifically authorized and empowered to deduct from any money accruing to party of second part: * * *

"(b)  The amount, or amounts, of any unauthorized credit extended by party of second part". * * *

Salary checks  to appellant Leese and those working for him were made out in, and sent from, the Company's office in Salt Lake; the asserted reason being it afforded a more satisfactory way for the deduction of employees' income tax and also for handling the unemployment compensation premiums based on the payroll.

William J. Wilson, Division Manager for the Oil Company at the Pocatello Division, had his office in the building owned by appellant and in Mr. Leese's absence, exercised direction and control for him over his employees.

On the buildings in various locations were signs "Utah Oil Refining Company" and "Home & Office of Utah Oil Refining Company", and the three trucks used by appellant Leese had this notation: "J. A. (Jim) Leese, distributor of Utah Oil Products".

The Board concluded from the above circumstances that:

"The Refining Company was the owner of the premises and virtually the proprietor of the business carried on at the premises on which deceased received his personal injury caused by an accident on August 16, 1944, and the defendant, James Leese, was the lessee of the same and under the provisions of Sections 43-1611 and 43-1806, I.C.A. both the defendants, Utah Oil Refining Company and James Leese were the employers of the deceased at the time he sustained his accident and received his injury on August 16, 1944".

This construction was clearly justified by the in-

terpretations and exposition of Section 43-1611[1] and Section 43-1806[2], I.C.A. in *Moon v. Ervin,* 64 Ida. 464, 133 P. (2d) 933.

Deceased's wife testified she usually went to the plant every day and sometimes helped her husband with some of his small tasks. She and a friend of hers, Mrs. Kinkade, testified they happened to go to the plant on August 16, 1944, and found deceased apparently ill and with a bleeding wound on his head, which he stated he had received by bumping his head on a loading rack while he was at work in the distributing plant. The two women urged him to see a doctor, but he declined, declaring the injury was minor and he would soon feel all right. He had had some trouble with his head prior to that time and it later developed he had a tumorous condition which, while of such a nature as to be ultimately and perhaps within sixteen to eighteen months of the time in question, fatal; according to the only physician who was called and testified, was accentuated, aggravated and made worse by trauma.

Deceased continued work until October, 1944. His con-

---

[1] "An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 43-1601 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensation, but the employee shall not recover compensation for the same injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or subcontractor for whom the employee was working at the time of the accident. This section shall be in force as to all contracts made subsequent to March 15, 1921". Section 43-1611, I.C.A.

[2] "'Employer', unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured it includes his surety so far as applicable.". Section 43-1806, I.C.A.

dition then was of such a serious nature that he consulted Dr. Martineau of Pocatello, who upon finding he had been previously treated by Dr. Harrow of Salt Lake City, suggested he return to Dr. Harrow—which he did in November. Dr. Harrow then operated upon deceased in Salt Lake City and drained a cranial hemorrhage. Deceased returned to Pocatello and becoming progressively worse, was again operated upon in Salt Lake in January, 1945, and died January 18 of that year. The official death certificate, signed by Dr. Harrow, gave as the cause of death, 'a brain tumor, right pareital lobe, malignant glioblastoma multiforma. Duration, five months'.

The Board found no notice of the accident was given appellant Leese or the Oil Company until November, 1944, more than sixty days after the related accident. Both appellant Leese and Wilson, the Oil Company Division Manager, admitted deceased then told them he had bumped his head in the plant in August. Their then only denial of liability was based upon the ground that he was not an employee of the Oil Company, and by Leese that:

"A. Well, I told him I didn't feel like being any party to a deal like that because he was out of my employ when he went to the hospital, and I couldn't feel too sorry about his financial condition, so I didn't really take it too much to heart. I felt there was no obligation to make a black mark against myself to make somebody else's finances in a better condition".

"A. Well, I couldn't see any reason why I should institute a deal through the Workmen's Compensation Act of the State of Idaho when there was really no case to—no reason for it. So far as I was concerned, there was no excuse or no reason other than Bob Moser, himself, wanting to get rid of some of his personal obligations through the workmen's compensation—using his exact words".

They made no investigation at that time to determine whether he had in fact received an injury or there had been an accident and their knowledge of his employment was the same all the time—hence, they were in this regard not in any way prejudiced by lack of earlier notice.

Dr. Martineau testified without objection and without contradiction as follows:

"Q. From your study of the history of the case, and from your examinations, did you come to any conclusions as to what had caused his condition?

"A. Yes, . . .

"Q. And what was that conclusion?

"A. On the basis of the history he presented and also on tests I later performed I concluded that there were several possibilities and that I couldn't make up my mind. I thought it was very likely this man has a line of brain tumors. I thought it was possible this head injury might have caused a subdural hematoma or drainage into the brain. In either case, the clinical findings would be quite similar and he had symptoms that were very strong for those two things.

"Q. Showing you this Claimant's Exhibit No. 3 which is a certified copy of the death certificate, and calling your attention here to the description as to the immediate cause of death, I will ask you if a bump or bruise on the head of Mr. Moser, assuming that one had occurred on August 16, 1944, could have contributed to the death of Mr. Moser from the cause indicated in the certificate?

"A. Yes. This particular type of tumor—in the first place—anyone with a brain tumor stands a blow to the head very poorly. I know that from personal experience. And the second thing, this particular type of tumor is a very malignant, very rapid growing tumor and would be more of the type that would be influenced by trauma. It is very undifferentiated, a very crude, malicious tumor. *They know if they cut into this and operate, the patient does more poorly than if they leave it alone.…* Any type of trauma is very hard on these tumors. (Emphasis ours).

It thus appears the type of tumor, from which condition aggravated by the blow, deceased ultimately died, was of such a nature that if the employer had known of the accident earlier, no medical or surgical attention could have been rendered which would have ameliorated the situation. While appellants urge they were deprived of the opportunity to sooner investigate the accident and determine whether in fact there was an accident, that was not the basis of their denial of liability when they were notified; therefore,

within the exemplification and application of Section 43-1205, I.C.A.[3] in *Clayton v. Hercules Mng. Co.*, 64 Ida. 34, 127 P. (2d) 762; and *Long v. Brown*, 64 Ida. 39, 128 P. (2d) 754, respondent has sufficiently met the burden of showing there was no prejudice by failure to sooner notify.

The order is therefore *affirmed.* Costs awarded to respondent.

Ailshie, C.J., and Budge, Holden and Miller, JJ., concur.

---

[3]"* * * Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, his agent or representative, * * * or that the employer has not been prejudiced by such * * * want of notice". Section 43-1205, I.C.A.