603 P.2d 156

James TUCKER and Linda
Tucker, Plaintiffs,

v.

UNION OIL COMPANY OF CALIFOR-
NIA, a corporation; Collier Carbon and
Chemical Corporation, a corporation;
Dover Corporation, a corporation; P–T
Coupling Company, Inc., a corporation;
E. D. Bullard Company, a corporation;
Paul Roberts Company, an Idaho Corpo-
ration; Graybill Wholesale Company, an
Idaho Corporation; and Intermountain
Equipment Company, an Idaho Corpora-
tion, jointly and severally, Defendants.

James TUCKER and Linda Tucker,
Plaintiffs-Respondents,

v.

COLLIER CARBON AND CHEMICAL
CORPORATION, a corporation,
Defendant-Appellant.

No. 12343.

Supreme Court of Idaho.

Nov. 5, 1979.

Glenn A. Coughlan of Coughlan & Coughlan, Boise, for defendants.

Harry M. Philo of Philo, Cockrel, Spearman, Copper, Rine, King & Atkinson, Detroit, Mich., Kenneth F. White, Nampa, for plaintiffs.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiff-respondent Tucker in a negligence action. Tucker suffered an industrial accident while in the employ of Feed Services [a non-party to this action], received workmen's compensation benefits therefor, and thereafter brought this action against eight defendants as third-party tortfeasors. The verdict and judgment were entered only against Collier Carbon and Chemical Company, appellant here. The principal issue presented on this appeal and a case of first impression in this jurisdiction is whether, in the context of an industrial accident and where the employer has been found to be negligent, this Court should adopt a doctrine of comparative fault. That doctrine would require a third-party tortfeasor to respond in damages only in the ratio which its negligence bears to all other negligent conduct by others. Correlatively stated, may a third-party tortfeasor escape liability for the total damages to plaintiff otherwise assigned to him by the traditional doctrine of the joint and several liability of joint tortfeasors.

While plaintiff-respondent Tucker, a direct employee of Feed Services, was in the scope of his employment, transferring aqua ammonia from one truck to another, he was injured when ammonia spurted into his eyes. He sustained loss of use of his right eye and loss of a portion of the use of his left eye. He made claim for workmen's compensation benefits and received a settlement for the loss of use of the right eye. A claim for the loss of a portion of the use of the left eye was left open for future benefits.

At the time of the trial, Tucker had received compensation benefits for temporary

total disability, permanent partial disability for the right eye, permanent partial disability for the left eye, future medical expenses for the right eye, and past medical expenses, all of which totaled $16,916.50.

Tucker and his wife thereafter brought this personal injury action against eight defendants. Following trial, a special verdict was returned by a unanimous jury finding that the defendant-appellant Collier Carbon, the plaintiff-respondent James Tucker, and his employer had all been negligent. The remaining defendants were found by that verdict not to have been negligent. That special verdict attributed the negligence which was the proximate cause of Tucker's eye injuries in the following proportions: plaintiff-respondent James Tucker, 10%; Feed Services, Inc., 30%; defendant-appellant Collier Carbon, 60%. The jury, with two members not agreeing, affixed the damages to James Tucker at $350,000.00, and the damages to Linda Tucker at $12,000.00. Thereafter, the court reduced these damages by 10%, that being the amount of the negligence attributable to plaintiff James Tucker, and entered judgment in favor of plaintiffs-respondents in the sum of $325,800.00, together with interest and costs. Thereafter, Collier Carbon moved that the judgment be amended by reducing the amount thereof in the sum of the workmen's compensation benefits received by Tucker. That motion was denied, as were other post-trial and post-judgment motions.

■ Collier Carbon first asserts that it was the statutory "employer" of Tucker under the provisions of and for the purposes of the Idaho workmen's compensation statutes. I.C. §§ 72–101 to –1434. If Collier was Tucker's "employer," Collier would be relieved of the tort liability imposed on it since a statutory employer is responsible for providing workmen's compensation coverage and, in return, is legally immune from suit by an employee based on injuries suffered in an industrial accident. *Provo v. Bunker Hill Co.,* 393 F.Supp. 778 (D.Idaho 1975); *Anderson v. Gailey,* 97 Idaho 813, 555 P.2d 144 (1976); I.C. §§ 72–209, –211.

Collier Carbon argues that in the present case it occupies the status of a statutory employer and since workmen's compensation benefits have been paid, its duty has been satisfied.

There appears no question but that Feed Services was the direct employer of Tucker. A direct contract of employment existed between Tucker and Feed Services, Tucker recognized Feed Services as his employer, and Tucker commonly used Feed Services' equipment and worked on the premises of Feed Services. Thus, Feed Services, as recognized by the trial court, was a statutory employer and the payment of workmen's compensation benefits to Tucker met the legal responsibility of Feed Services. *See* I.C. §§ 72–102(10), –209, –211.

■ An employee, however, can have more than one statutory employer. Most of Idaho's law dealing with multiple statutory employers involves subcontractors. *See, e. g., Adam v. Titan Equipment Supply Corp.,* 93 Idaho 644, 470 P.2d 409 (1970); *Findley v. Flanigan,* 84 Idaho 473, 373 P.2d 551 (1962); *Gifford v. Nottingham,* 68 Idaho 330, 193 P.2d 831 (1948); I.C. §§ 72–102, –216(1), (2). *See also Moser v. Utah Oil Refining Co.,* 66 Idaho 710, 168 P.2d 591 (1946). Here, however, no general contractor-subcontractor relationship existed between Collier Carbon and Feed Services, and thus the cases are useful only for purposes of analogy.

The existence of an employer-employee relationship at common law, and the necessary element or elements therefor, is of no assistance. As noted in *Adam v. Titan Equipment Supply Corp., supra,* the concept of "statutory employer" is broader than the concept of "employer" under other areas of the law:

" 'The relation thus established is purely statutory. The legislature for the purpose of the compensation act created the relation of employer and employee between independent groups who never before had borne, and who do not now under the common law bear that relation to each other. It forces liability upon parties who are in privity of contract.'

*Gifford v. Nottingham,* 68 Idaho at 337, 193 P.2d at 835." *Adam v. Titan Equipment Supply Corp.,* 93 Idaho at 647, 470 P.2d at 412.

■ This Court in construing our workmen's compensation statutes has at times focused on the right to control as being a significant element in determining statutory employer status. *See In re Sines,* 82 Idaho 527, 356 P.2d 226 (1960); *Merrill v. Duffy Reed Constr. Co.,* 82 Idaho 410, 353 P.2d 657 (1960); *State ex rel. Wright v. Brown,* 64 Idaho 25, 127 P.2d 791 (1942); *Larson v. Independent School Dist. No. 11–J,* 53 Idaho 49, 22 P.2d 299 (1933). *See also Fitzen v. Cream Top Dairy,* 73 Idaho 210, 249 P.2d 806 (1952) (dealing with the authority to direct the details of work) and *Beutler v. MacGregor Triangle Co.,* 85 Idaho 415, 380 P.2d 1 (1963); *Russell v. City of Idaho Falls,* 78 Idaho 466, 305 P.2d 740 (1956); *State ex rel. Wright v. Brown, supra; Hanson v. Rainbow Mining and Milling Co.,* 52 Idaho 543, 17 P.2d 335 (1932); *Taylor v. Blackwell Lumber Co.,* 37 Idaho 707, 218 P. 356 (1923) (relating to the authority to hire and fire). *See also Lockard v. St. Maries Lumber Co.,* 76 Idaho 506, 285 P.2d 473 (1955) (relating to the existence of an employment contract). *See In re Sines, supra; Merrill v. Duffy Reed Constr. Co., supra* (relating to the payment of wages).

Other opinions of the Court have dealt with the consideration to be given such elements as ownership of the premises, proprietorship, virtual proprietorship, and management of the business. *See McGee v. Koontz,* 70 Idaho 507, 223 P.2d 686 (1950); *Moon v. Ervin,* 64 Idaho 464, 133 P.2d 933 (1943); *Jones v. Packer John Mines Corp.,* 60 Idaho 653, 95 P.2d 572 (1939).

Another element to be considered is the source of the payment of workmen's compensation premiums. Commonly, the statutory employer pays the premiums covering his employees, since it is the employer's legal responsibility to insure that his employees are covered by workmen's compensation insurance. *See* I.C. §§ 72–201, –204, –210. *See generally Pinson v. Minidoka Highway Dist.,* 61 Idaho 731, 106 P.2d 1020 (1940).

■ The principal argument of Collier Carbon regarding its status as a "statutory employer" flows from Collier Carbon's ownership of some 78% of the stock of Feed Services. Also, the President of Feed Services, one Van Liere, was a paid employee of Collier Carbon. Collier Carbon personnel offered business guidance to Feed Services. However, Feed Services remained a separate corporate entity and Collier Carbon did not control its day-to-day operation. Collier Carbon did not have the right to control Feed Services' operations or its employees. They did not direct the details of Feed Services' work nor did they have the right to hire or fire personnel. There was no employment contract between Collier Carbon and the employees of Feed Services, and generally Collier Carbon did not pay the wages of Feed Services' employees. Feed Services was the owner of the premises and the proprietor of the business. Collier Carbon had no ownership interest or direct financial interest in Feed Services' property and business; the ownership in one corporation by another does not itself create an ownership interest in the property: "Ordinarily, two or more corporations are separate and distinct entities, although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporation may have the same persons as officers * * *." 18 C.J.S. Corporations § 5 j, at 374. *See, e. g. Noto v. CIA Secula di Armanento,* 310 F.Supp. 639 (S.D.N.Y.1970); *Oakland Medical Building Corp. v. Aureguy,* 41 Cal.2d 521, 261 P.2d 249 (1953); *Surgical Supply Center, Inc. v. Industrial Commission,* 118 Utah 632, 223 P.2d 593 (1950); *Rena-Ware Distributors, Inc. v. State,* 77 Wash.2d 514, 463 P.2d 622 (1970); *see also National Carbide Corporation v. Commissioner of Internal Revenue,* 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949).

The fact that Collier Carbon had a 78% stockholder interest in Feed Services did not destroy the separate identity of Feed Services; "[o]wnership of capital stock in one corporation by another does not, itself,

create an identity of corporate interest between the two companies, nor render the stockholding company the owner of the property of the other * * *." *Inn Operations, Inc. v. River Hills Motor Inn Co.*, 261 Iowa 72, 152 N.W.2d 808, 815 (1967). *See also Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966); *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946); *Riffle v. Robert L. Parker Co.*, 19 Ariz.App. 100, 505 P.2d 268 (1973); *Superior Coal Co. v. Department of Finance*, 377 Ill. 282, 36 N.E.2d 354 (1941); *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.*, 45 Ill. App.2d 192, 195 N.E.2d 287 (1963); *Surgical Supply Center v. Industrial Commission, supra; Christensen v. Skagit County*, 66 Wash.2d 95, 401 P.2d 335 (1965). Neither does the fact that one corporation exercises some supervision over another corporation mean that it is "carrying on" that business. *Kirk v. United States*, 232 F.2d 763 (9th Cir. 1956).

In sum, the stock interest held by Collier Carbon in Feed Services, when viewed in light of the record and the appropriate law, does not require the setting aside or the piercing of the "corporate veil; " thus, Collier Carbon does not meet Idaho's statutory workmen's compensation definition of "employer." Rather, it falls within the broad definition of "third party" of I.C. § 72–223(1). Hence, the lower court holding that Collier Carbon was not a "statutory employer" such as to immunize it from a negligence action as a "third party" was correct and is affirmed.

■ We now turn to Collier Carbon's assertions of error relating to admission of evidence during trial. Collier Carbon argues that the admission of an enlargement of a journal article was error. That article and, of course, its enlargement dealt with the dangers of handling liquid ammonia in an agricultural context and indicated the need for better educational programs, together with improved coupling devices. It appears that the initial theory of admission was that the article was relevant to show that the President of Collier Carbon was on notice of the contents of that article. Proper foundation was laid in showing that the author was an authority in the field and that the President of Collier Carbon was a member of a society, all of whose members received the journal article. A second theory for admissibility was that the article represented authoritative research on ammonia handling safety measures. Although hearsay, such would be admissible under the hearsay exception, I.C. § 9–402, as a "book of science" written by a person indifferent as between the parties. *See Julien v. Barker*, 75 Idaho 413, 272 P.2d 718 (1954). We find no error in the admission of the enlargement of the journal article.

■ The trial court, over objection, permitted the plaintiffs' counsel, during jury argument, to use a mathematical formula relating to damages for pain and suffering. It is argued that this per diem argument was erroneous in that it involved speculation and invaded the province of the jury, and that this error was compounded by the district court's failure to instruct the jury that the per diem argument was not evidence in the case. We disagree.

Per diem arguments are allowed in Idaho as long as counsel does not employ unfair, misleading, or inflammatory tactics in his use of figures. *Meissner v. Smith*, 94 Idaho 563, 494 P.2d 567 (1972). We find no indication in the record of the use of any unfair or inflammatory tactics. In fact, during the argument of plaintiffs' counsel, he indicated to the jury that they were not bound to accept his figure: "if you take a reasoning process, there is no mathematical formula. It is your own good judgment on this. There is no set value on pain and suffering." The jury was properly instructed on the measure of damages and was told: "what counsel asked for in their arguments was no criteria for measure of damages sustained. The opinion or conclusion of counsel as to what damages should be awarded should not influence you unless it is sustained by the evidence * * *." We find no error.

■ Collier Carbon next assigns as error the admission of two pictures of portable

eyewash fountains on the basis that they were prejudicial and hearsay. We disagree. The pictures were admitted to supplement the testimony of a witness who was attempting to verbally describe eyewash fountains. We find no error. *McKee v. Chase*, 73 Idaho 491, 253 P.2d 787 (1953). *See also State ex rel. McKinney v. Richardson*, 76 Idaho 9, 277 P.2d 272 (1954).

■ Collier Carbon asserts error in the admission of an exhibit depicting plaintiffs' income for the previous five years. However, no objection was made thereto and any error as to its admission cannot now be raised on appeal. *See Hayward v. Yost*, 72 Idaho 415, 242 P.2d 971 (1952).

■ Collier Carbon next asserts that the trial court committed error in permitting references to insurance coverage during trial. The general rule is that evidence of insurance is inadmissible at trial. Annot., 4 A.L.R.2d 761 (1949). However, it is also clear that evidence of insurance to prove one of the material issues in the case is admissible. *See* 75 Am.Jur.2d, Trial, § 256 (1974). Here, one of Tucker's theories of liability was that Union Oil [a principal stockholder of Collier Carbon and one of the defendants but dismissed at trial] had obtained workmen's compensation coverage as to Feed Services employees and had also acquired other liability insurance for Feed Services. Plaintiffs theorized that an insurance carrier's accident prevention services would have prevented Tucker's injuries and that if Feed Services had acquired its coverage directly, it would have received such safety inspection and safety advice from an insurance carrier. Our review of the record indicates that the evidence of workmen's compensation and liability insurance was submitted in support of that theory. Almost the entirety of this evidence was directed at the then defendant Union Oil.

That evidence was also submitted to show the method of workmen's compensation payments to Tucker. As indicated by the instructions to the jury, and as will be discussed hereafter, evidence of those workmen's compensation benefits paid to Tucker was necessary to the consideration of an award of damages. Indeed, Collier Carbon has asserted that the failure to set off workmen's compensation benefits received by plaintiffs-respondents against their damages constituted error. We hold that the trial court was required to exercise its discretion in determining whether the prejudicial effect of the evidence relating to insurance coverage would outweigh its probative value as to one of the material issues in the case. We find no abuse of that discretion.

Following the dismissal of Union Oil as a defendant in the case, Collier Carbon could have requested an instruction to the jury at that time, or at the close of all of the evidence, requiring the jury to disregard any prior evidence as to insurance. The record reveals that defense counsel was solicited as to their desires for Idaho jury instruction No. 101, stating in part, "No insurance company is a party to this action. You must refrain from any inference, speculation or discussion about insurance." No such request was made by defense counsel. *See, e. g., Hansen v. Howard O. Miller, Inc.*, 93 Idaho 314, 460 P.2d 739 (1969); *Barry v. Arrow Transp. Co.*, 83 Idaho 41, 358 P.2d 1041 (1960); *Crossler v. Safeway Stores, Inc.*, 51 Idaho 413, 6 P.2d 151 (1931). We find Collier Carbon's assertion of error to be without merit.

Collier Carbon asserts error as to the jury's finding of negligence on the part of Collier Carbon which was the proximate cause of Tucker's injuries. Plaintiffs' theory appears to be that Collier Carbon undertook to provide management services to Feed Services, and that, having done so, it could be held liable to the Tuckers for its negligent performance. Collier Carbon does not assert that there was no duty imposed on it nor does it assign error to the jury instruction setting forth that duty, but principally it argues theories of causal relationship. The jury was instructed that "one who undertakes to provide management services, consultation or advice, must do so with reasonable care and prudence and is subject to liability if one is harmed by failure to use reasonable care if such failure is a proximate cause of plaintiff's injuries."

Collier Carbon does not assign error to that instruction and indeed Collier Carbon's counsel, in final argument to the jury, relied heavily upon it, directed the jury's attention to it, and urged that it be carefully read, considered, and given weight. Counsel also pointed out that the latter part of that instruction told the jury that mere stock ownership or interlocking directorates would not, in and of itself, make Collier Carbon liable.

In view of defendant's non-assignment of error, it is not necessary that we express any opinion relating to the validity of the court's instruction to the jury. *See*, however, *Smith v. American Employers' Insurance Co.*, 102 N.H. 530, 163 A.2d 564 (1960); *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769 (1964); Annot., Breach of Assumed Duty to Inspect Property as Ground of Liability for Damage or Injury to Third Person, 6 A.L.R.2d 284 (1949).

▮ It is the major thrust of Collier Carbon's argument that its negligence was not sufficiently causally related to plaintiff's damages or that Tucker's or Feed Services' negligence constituted an intervening and superseding cause, thereby excusing Collier Carbon from liability. We disagree. Questions of negligence, and particularly those of proximate causation and intervening or superseding causation, present questions of fact to be resolved by the trier of the fact; they become a matter of law only when the facts are undisputed and only one reasonable conclusion can be drawn from the evidence. *McDrummond v. Montgomery Elevator Co.*, 97 Idaho 679, 551 P.2d 966 (1976); *Papp v. Cantrell*, 96 Idaho 751, 536 P.2d 746 (1975); *Schaefer v. Elswood Trailer Sales*, 95 Idaho 654, 516 P.2d 1168 (1973); *Fairchild v. Olsen*, 96 Idaho 338, 528 P.2d 900 (1974).

▮ Here, the testimony was in sharp conflict as to the existence or nonexistence of safety standards, safety inspections, safety training materials, emergency treatment, procedures and facilities, inherent danger resulting from coupling and transfer devices, the absence of personal protective equipment, and the impact of the existence or lack of existence of these measures, materials and facilities upon the plaintiff Tucker. The jury reasonably could have concluded that Collier Carbon was negligent.

We now turn to the most significant aspects presented by this appeal, *i. e.*, the amount of damages, and the jury's allocation of the negligence attributable to the parties and the non-party employer which resulted in the entry of judgment against Collier Carbon for 90% of the jury's assessed damages.

As noted above, the jury apportioned the negligence for Tucker's injuries as follows: Collier, 60%; Feed Services, Inc. (Tucker's employer), 30%; and plaintiff James Tucker, 10%. James Tucker's damages were assessed as $350,000.00, and Linda Tucker's damages as $12,000.00. The trial court reduced the damage awards by 10% for the contributory negligence attributable to James Tucker and entered judgment in favor of the Tuckers and against Collier Carbon in the amount of $325,800.00.[1]

Collier Carbon asserts that the trial court erred in entering judgment against it in a sum representing 90% of the jury's assessment of damages, thereby placing upon it liability for 90% of the negligence which resulted in Tucker's damages. Collier Carbon asserts that its liability should be limit-

1. We note that such reduction by the court of the total jury assessed damages in effect was an imputation of James Tucker's negligence to his wife Linda Tucker, since her jury assessed damages were also reduced by the 10% attributed to James Tucker. The record reveals no objection to such reduction by counsel for respondent Linda Tucker, and no argument regarding such reduction was made on this appeal. Hence no decision is necessary and comments thereon are merely advisory. *See*, however, *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964), as contrasted with *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975), and the possible impact of I.C. § 6–801. *See also Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974); Reppy, Comparative Negligence: Its Effect on California Community Property Law, 4 Community Property Journal 219 (1977). *Note* 24 Kan.L.Rev. 433 (1976).

ed to its comparative fault as found by the jury, to-wit: 60% of the negligence.

▮ Collier Carbon concedes that Feed Services is not liable to the plaintiffs for more than those amounts Feed Services was required to pay under the workmen's compensation statutes, albeit the jury found that 30% of the negligence was attributable to Feed Services. Such concession is consistent with the Idaho statutes and the decisions of this Court. Ordinarily, an employee injured or killed in the course of his employment within the scope of the workmen's compensation law has no cause of action against his employer based on tort regardless of the fault of the employer. The liability of the employer and the remedy of the employee as against the employer fall solely under the workmen's compensation statutes. I.C. §§ 72–209, –211; *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976).

We further note that Collier Carbon makes no claim on this appeal for any contribution from the employer Feed Services, because of the negligence attributable to Feed Services. We are, thus, mercifully spared from and leave to another case on another day any discussion of that potential problem.

Collier Carbon contends that the enactment of our comparative negligence statutes, I.C. § 6–801 to –806, together with general principles of equity and fairness require that its liability for damages should be based on its proportionate share of fault. We disagree.

I.C. § 6–801 provides:

"Comparative negligence—Effect of contributory negligence.—Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

To be particularly noted is the language that the damages allowed should be "diminished in the proportion to the amount of negligence attributable to the person recovering." The trial court reduced the total award of damages by the 10% of the negligence which was attributable to James Tucker. The result sought here by Collier Carbon would effectively attribute the negligence of Feed Services to the Tuckers. That result is not required by I.C. § 6–801. The express language of portions of our comparative negligence act make clear that our legislature intended to retain the general common law rule of joint and several liability. I.C. § 6–804 provides in pertinent part:

"*Common law liabilities preserved*—Nothing in this act effects: (1) the common law liability of the several joint tortfeasors to have judgment recovered and payment made from them individually by the injured person for the whole injury. However, the recovery of a judgment by the injured person against one (1) joint tortfeasor does not discharge the other joint tortfeasors."

▮ We deem it clear that the contention of Collier Carbon that a negligent tortfeasor's liability is to be limited solely to his proportionate fault would undermine the fundamental rationale of the joint and several liability doctrine. At this time at least, the adoption of our comparative negligence act in Idaho does not require and we do not deem it appropriate to find a legislative intent to so abolish joint and several liability.

▮ We also hold that a limitation of liability based on proportionate fault, as argued by Collier, would be inconsistent with I.C. § 6–803(3), which provides:

"When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares *solely for the purpose of determining their*

*rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law."* (Emphasis supplied.)

This statutory provision makes it clear that while there may be an equitable readjustment by contribution among multiple tortfeasors, such has no effect on the total liability of any individual tortfeasors to the injured plaintiff.

Although Collier Carbon argues that it and Feed Services are not "joint tortfeasors" as contemplated by I.C. § 6–803(3), we find that question unnecessary to our decision. That question is more uniquely necessary to a case involving contribution claims among "joint tortfeasors." As noted, Collier Carbon makes no such claim against Feed Services. Both the California and Washington Courts have rejected the same result absent a statutory system for contribution among multiple tortfeasors.

In *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), the court held that the adoption of comparative negligence (*Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975)) did not require that a concurrent tortfeasor be held liable only for a portion of a plaintiff's total recovery determined on the basis of the individual tortfeasor's comparative fault. That court stated:

"[W]e conclude that our adoption of comparative negligence to ameliorate the inequitable consequences of the contributory negligence rule does not warrant the abolition or contraction of the established 'joint and several liability' doctrine; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury. Contrary to petitioner's contention, we conclude that joint and several liability does not logically conflict with a comparative negligence regime. Indeed, as we point out, the great majority of jurisdictions which have adopted comparative negligence have retained the joint and several liability rule; we are aware of no judicial decision which intimates that the adoption of comparative negligence compels the abandonment of this long-standing common law rule. The joint and several liability doctrine continues, after *Li*, to play an important and legitimate role in protecting the ability of a negligently injured person to obtain adequate compensation for his injuries from those tortfeasors who have negligently inflicted the harm." *American Motorcycle Ass'n v. Superior Court*, 146 Cal.Rptr. at 184, 578 P.2d at 901.

That court held that the common law principles of joint and several liability were consistent with comparative negligence and stated:

"Under well-established common law principles, a negligent tortfeasor is generally liable for all damage of which his negligence is a proximate cause; stated another way, in order to recover damages sustained as a result of an indivisible injury, a plaintiff is not required to prove that a tortfeasor's conduct was the sole proximate cause of the injury, but only that such negligence was a proximate cause.

\* \* \* \* \* \*

"In the concurrent tortfeasor context, however, the 'joint and several liability' label does not express the imposition of any form of vicarious liability, but instead simply embodies the general common law principle, noted above, that a tortfeasor is liable for any injury of which his negligence is a proximate cause. Liability attaches to a concurrent tortfeasor in this situation not because he is responsible for the acts of other independent tortfeasors who may also have caused the injury, but because he is responsible for all damage of which his own negligence was a proximate cause. When independent negligent actions of a number of tortfeasors are each a proximate cause of a single injury, each tortfeasor is thus personally liable for the damage sustained, and the injured person may sue one or all of the tortfeasors to obtain a recovery for his injuries; *the fact that*

*one of the tortfeasors is impecunious or otherwise immune from suit does not relieve another tortfeasor of his liability for damage which he himself has proximately caused.*" (Emphasis supplied.) 146 Cal. Rptr. at 187, 578 P.2d at 904.

*See also Arbaugh v. Procter & Gamble Mfg. Co.*, 80 Cal.App.3d 500, 145 Cal.Rptr. 608 (1978), and *Seattle First Nat'l Bank v. Shoreline Concrete*, 91 Wash.2d 230, 588 P.2d 1308 (1978).

 Collier Carbon further argues that the limitation of its liability to its proportionate fault is uniquely justified in this case because Feed Services is immunized from tort liability to the Tuckers by the workmen's compensation law. Essentially, this same argument, and the basic argument that the adoption of comparative negligence requires the abrogation of the common law rules of joint and several liability, were presented and rejected by the California and Washington courts in *Arbaugh v. Procter & Gamble Mfg. Co., supra*, and *Seattle First Nat'l Bank v. Shoreline Concrete, supra.*

 It is apparent in the cases discussed above that underlying the rejection of limiting damages to proportionate fault is the retention of the concept that each tortfeasor whose negligence is a proximate cause of an indivisible injury should remain individually liable for *all* compensable damages attributable to that injury. Such is the underlying basis for the rule of joint and several liability.

This Court has long held that when tortious acts of several parties concurrently cause an injury, each tortfeasor is liable for the whole of the damage. *Pollard v. Land West, Inc.*, 96 Idaho 274, 526 P.2d 1110 (1974); *Spencer v. Spencer*, 91 Idaho 880, 434 P.2d 98 (1967); *Russell v. City of Idaho Falls*, 78 Idaho 466, 305 P.2d 740 (1956); *Lorang v. Hays*, 69 Idaho 440, 209 P.2d 733 (1949). *See also* 2 Restatement (Second) of Torts §§ 434(2), 439 (1965); W. Prosser, Law of Torts §§ 46, 47 (4th ed. 1971); F. Harper & F. James, The Law of Torts, § 10.1 (1956).

We see no compelling reason to change that well-established rule when, as here, the jury verdict attributed only 60% of the negligence to Collier Carbon. As stated in *Seattle First National Bank v. Shoreline Concrete, supra* :

"Joint and several liability is premised upon causation and indivisibility of the *harm* caused. The simple feasibility of apportioning *fault* on a comparative negligence basis, between plaintiff and defendant, does not render an indivisible injury 'divisible' for purposes of joint and several liability. That it may be possible to assign a percentage figure to the relative culpability of multiple tort-feasors does not detract from the preliminary fact that *each* tort-feasor's conduct was a proximate cause of an indivisible injury." 588 P.2d at 1313.

*See also American Motorcycle Ass'n v. Superior Court, supra.*

As to one of multiple tortfeasors being immunized from liability, the Restatement (Second) of Torts, § 880 states: "*Where one of two tortfeasors has immunity.*—Where two persons would otherwise be liable for a harm, one of them is not relieved from liability by the fact that the other has an absolute privilege to act or an immunity from liability to the person harmed."

Prior to the enactment of our comparative negligence statute, this Court in *Russell v. City of Idaho Falls*, 78 Idaho 466, 305 P.2d 740 (1956), considered the immunization of one tortfeasor from liability and stated:

"The dismissal of the [statutory employer] from the action does not alter the theory of joint and concurrent negligence, since liability for a tort may be treated as joint or several at the election of the aggrieved party; and the fact that one wrongdoer may not be held accountable to the injured party, as for instance, because of its immunity under the workmen's compensation law, will not exempt the other from tort liability." *Id.* at 478, 305 P.2d at 747.

Collier argues that the plaintiffs should be required to bear the burden of the em-

ployer's negligence since it is the plaintiff-employee who derives the benefit of a sure recovery under the workmen's compensation laws. If we were to adopt Collier's theory, this burden would result in a further reduction of the Tuckers' recoverable damages by the amount of negligence attributed to the statutory employer Feed Services (30%) in addition to the reduction of damages for the negligence of James Tucker (10%). This Court has not addressed this argument since the legislative adoption of comparative negligence. However, we never required the plaintiff-employee to bear a similar burden when contributory negligence was an absolute bar to recovery.

In *McDrummond v. Montgomery Elevator Co.*, 97 Idaho 679, 551 P.2d 966 (1976), a case in which the accident occurred prior to the effective date of the comparative negligence act, the Court recognized that recovery in an employee's negligence action against a nonemployer defendant should not be denied as a result of the concurring negligence of the employer liable for worker's compensation benefits. The *McDrummond* court reversed a judgment in favor of the nonemployer defendant and remanded the cause for a new trial. The Court found that a jury instruction was too broad in its application because it was: "conceivable that the jury, while finding [the plaintiff-employee] free from contributory negligence, might find that [the employer] was contributorily negligent, and under the instruction as given that finding would bar not only recovery by [the employer] and its subrogee, but would also bar any recovery by [the employee]." *Id.* at 682–83, 551 P.2d 969–70. By so ruling, this Court recognized that the negligence of the employer should not be attributed to the employee in the employee's suit against the nonemployer tortfeasor.

■ We do not find that the adoption of comparative negligence should alter the basic underlying rationale of *McDrummond*. As previously noted, if we were to limit Collier's liability to 60% of the Tuckers' total damages, we would effectively attribute Feed Services' comparative negligence (30%) to the Tuckers by reducing their total recoverable damages. It is generally held amongst other jurisdictions that an employee cannot be met with the defense that the employer was concurrently negligent along with the nonemployer tortfeasor. *See* Larsen, Workmen's Compensation Law § 75.22 (1976). There is no indication in the workmen's compensation law of Idaho that the employer's negligence should be attributed to his employee, and we decline to so hold. *See* I.C. § 72–223.

■ Collier Carbon next argues that a liability in excess of its proportionate fault results in blatant inequity and unfairness. In support thereof, Collier Carbon relies primarily on *Murray v. United States*, 132 U.S.App.D.C. 91, 405 F.2d 1361 (D.C.Cir. 1968).

In *Murray* an injured federal government employee received benefits under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.*, and then sued the nonemployer third party tortfeasor Murray for negligence. The nonemployer Murray brought third party complaints against the United States, as employer, for contribution. The court held that FECA prohibited such a contribution action. The court, however, held that such prohibited contribution would be unduly harsh on the nonemployer third party tortfeasor since the employer United States was also negligent, and thus held that the judgment of the plaintiff against nonemployer Murray should be reduced by one-half. That one-half reduction appears to be arbitrary in that it bears no necessary relationship to the amount of causal negligence assigned to the nonemployer third party tortfeasor. The court stated:

"Any inequity residing in the denial of contribution against the employer is mitigated if not eliminated by our rule in *Martello v. Hawley*, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962). *Martello* holds that where one joint tortfeasor causing injury compromises the claim, the other tortfeasor, though unable to obtain contribution because the settling tortfeasor

had 'bought his peace,' is nonetheless protected by having his tort judgment reduced by one-half, on the theory that one-half of the claim was sold by the victim when he executed the settlement. In our situation if the building owner [Murray] is held liable the damages payable should be limited to one-half of the amount of damages sustained by plaintiff, assuming the facts would have entitled the owner to contribution from the employer if the statute had not interposed a bar. A tortfeasor jointly responsible with an employer is not compelled to pay the total common law damages. The common law recovery of the injured employee is thus reduced in consequence of the employee's compensation act, but that act gave him assurance of compensation even in the absence of fault." *Id.* 132 U.S.App.D.C. at 95, 405 F.2d at 1365.

The rationale of *Murray* was rejected by the Ninth Circuit Court of Appeals in the companion cases of *Dodge v. Mitsui Shintaku Ginko K.K. Tokyo,* 528 F.2d 669 (9th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); and *Shellman v. United States Lines, Inc.,* 528 F.2d 675 (9th Cir. 1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976). In those cases the negligence causing plaintiff's injuries was apportioned by the trier of fact between the employer (who was a stevedore, and, therefore, exempt from common law liability under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950) and the third party tortfeasor (a vessel owner). In *Shellman* the trial court had reduced the plaintiff's recovery by the percentage of his own negligence, plus the percentage of the employer's negligence, which is, of course, similar to the relief sought by Collier here.

The Circuit Court in *Dodge* and *Shellman* relied upon *Hubbard v. Great Pacific Shipping Co. Monrovia,* 404 F.Supp. 1242 (D.Or. 1975), and concluded that the plaintiffs should recover the full amount of their damages from the third party tortfeasor shipowner. Therein, the court recognized that the adoption of either the "Murray Credit" or the rationale of the district court

in *Shellman* would simply shift the inequities from the third party tortfeasor vessel owner to the plaintiff.

Also, in 1977, the New Jersey court in *Arcell v. Ashland Chemical Co., Inc.,* 152 N.J.Super. 471, 378 A.2d 53 (1977), rejected the theory of *Murray,* to-wit: that the payment of workmen's compensation benefits by an employer is comparable to a settlement between an injured party and a tortfeasor. The New Jersey court concluded that the rule of *Murray* is: "not to equitably adjust the rights of the parties involved in an employment related injury, on the contrary, it merely shifts any inequity in the present system from the shoulders of the third party tortfeasor to those of the injured employee." *Arcell v. Ashland Chemical Co.,* 378 A.2d at 61. *See also* 2 Larsen, *supra,* § 76–22.

The United States Supreme Court has recently (June 27, 1979), spoken to the matter in *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). There, a longshoreman was injured in the course of his employment and received benefits under the Longshoremen's and Harbor Workers' Compensation Act, *supra.* Thereafter, the longshoreman brought a negligence action against the third party tortfeasor shipowner. A jury determined that the plaintiff longshoreman was 10% negligent, the employer stevedore 70% negligent, and the third party tortfeasor shipowner 20% negligent. The district court reduced the damage award by the 10% attributed to plaintiff's own negligence, but refused to reduce the damage award against the third party tortfeasor shipowner in proportion to the negligence of the employer stevedore. The Fourth Circuit Court of Appeals reversed, holding the third party tortfeasor shipowner liable only for that part of the total damage equivalent to its comparative negligence. The United States Supreme Court reversed the Fourth Circuit essentially on its interpretation of the congressional enactments, but did discuss the impact of the proportionate fault rule and the equities of placing the loss on either the plaintiff-long-

shoreman or the third party tortfeasor-ship-owner. Although both *Dodge* and *Shellman* were footnoted as cases at variance with the Circuit Court's decision in *Edmonds, Murray* was inexplicably not mentioned.[2]

We find *Murray* unpersuasive in light of subsequent developments of the law in the federal system. We also find *Murray* unpersuasive in light of our current statutory scheme in Idaho. Although the rationale of *Murray* and the rule sought by appellants here regarding proportionate fault may appear, at first blush, a "fair" or "equitable" result to a difficult and complex problem, we decline to adopt such a rule under the guise of interpreting the interrelationship between our workmen's compensation law and our comparative negligence act.

There appears no question but that an injured employee may receive workmen's compensation benefits and thereafter bring a negligence action against a third party tortfeasor who was a nonemployer. I.C. § 7–223. *See generally McDrummond v. Montgomery Elevator Co., supra; White v. Ponozzo,* 77 Idaho 276, 291 P.2d 843 (1955); *Lebak v. Nelson,* 62 Idaho 96, 107 P.2d 1054 (1940); *Department of Finance v. Union Pac. R. R. Co.,* 61 Idaho 484, 104 P.2d 1110 (1940). However, there is no indication in our statutory scheme of workmen's compensation law that would dictate the result sought by appellants here, *i. e.,* the shifting of the inequity from the third party tortfeasor to the plaintiff employee. As discussed earlier, such a holding would effectively undermine the rule of joint and several liability.

As noted, we hold that the interrelationship between our workmen's compensation statutes and our comparative negligence statutes do not compel the result sought by appellants here. As asserted, there are certain inequities which result from our ruling of today. However, the result argued for by Collier Carbon would shift that inequity

to the plaintiff. If such a result is to be obtained, it is, we believe, best left to the legislative process.

Collier Carbon next asserts that notwithstanding its earlier arguments, the judgment awarded should be reduced by the amount of workmen's compensation benefits received by Tucker. They argue that the instructions of the court relating thereto were inadequate, and to that extent at least, the verdict is excessive. We agree.

I.C. § 72–223 provides that an employer may be subrogated to the rights of the employee to the extent that the employee has received compensation benefits. In *Liberty Mutual Ins. Co. v. Adams,* 91 Idaho 151, 417 P.2d 417 (1966), however, the right of an employer to such subrogation and its ability to obtain reimbursement from the employee was limited. The Court held that when an employer's negligence, together with the negligence of a third party nonemployer tortfeasor, concurrently contributed to the injury of an employee, neither the employer not his surety may obtain reimbursement for workmen's compensation benefits from an employee who recovers damages from a third party tortfeasor. *Liberty Mutual* was based on *Witt v. Jackson,* 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961), which in turn followed the North Carolina rule, "that the third party is entitled to have the judgment against him reduced by the amount of compensation paid to the injured employee if he can prove that the concurrent negligence of the employer contributed to the injuries suffered by the employee." *Witt v. Jackson,* 17 Cal. Rptr. at 377, 366 P.2d at 649. The court in *Witt* stated:

"Thus, whether an action is brought by the employer or the employee, the third party tortfeasor should be able to invoke the concurrent negligence of the employer to defeat its right to reimbursement, since, in either event, the action is brought for the benefit of the employer

2. Although *Murray* involved the Federal Employee's Compensation Act, its rationale applies equally to the virtually identical provisions of the Longshoremen's and Harbor Work-

ers' Compensation Act, 33 U.S.C. §§ 901–50 (1970). *See Marant v. Farrell Lines, Inc.,* 550 F.2d 142 (3 Cir. 1977).

to the extent that compensation benefits have been paid to the employee." 17 Cal.Rptr. at 377, 366 P.2d at 649 (Quoted in *Liberty Mutual Insurance Company v. Adams, supra,* 91 Idaho at 156, 417 P.2d 417.)

Further, the California court concluded that an injured employee may not be allowed a double recovery and thus his damages must be reduced by the amount of workmen's compensation received. *See generally Shields v. Wyeth Laboratories, Inc.,* 95 Idaho 572, 513 P.2d 404 (1973).

Both *Witt* and *Liberty Mutual* were decided prior to the adoption of comparative negligence, and at a time when contributory negligence on the part of an injured employee was an absolute bar to his recovery. That issue, however, was addressed in *Associated Construction & Engineering Co. v. Workers' Compensation Appeals Bd.,* 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978). The *Associated* court concluded that a concurrently negligent employer should be entitled to either credit to or reimbursement from the employee for the amount which the employer's compensation liability exceeds the proportionate liability it would suffer as a noninsulated tortfeasor. The *Associated* court recognized that the third party tortfeasor liability should be reduced by the amount of the workmen's compensation benefits assessed against the concurrently negligent employer, stating:

> "When the issue of an employer's concurrent negligence arises in a judicial forum, application of comparative negligence principles is relatively straightforward. The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of *Witt.* Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle.* The court should then deduct

the employer's percentage share of the employee's total recovery from the third party's liability—up to the amount of the worker's compensation benefits assessed against the employer.

\*　　\*　　\*　　\*　　\*　　\*

Under the rule of *American Motorcycle,* the joint and several liability of joint tortfeasors is retained. [Citations omitted.] Thus, except for his *Witt*—type deduction, the third party remains liable for all of employee's damages, including the portion which represents the extent to which [the negligent employer is insulated] from the comparative responsibility he would otherwise incur." 150 Cal. Rptr. at 896 and n. 9, 587 P.2d at 692 and n. 9.

We find the rationale of *Associated* to be persuasive. The defendant-appellant Collier Carbon is entitled to have the judgment against it reduced by the amount of workmen's compensation benefits paid to Tucker. As to that portion of the *Associated* decision relating to the right of the employer to be subrogated to a portion or all of the workmen's compensation benefits dependent upon the extent to which negligence has been assessed against the employer, we find such to be unnecessary to our decision today.[3]

The Tuckers argue that their total judgment of $350,000.00 should not be reduced in this case because the jury was adequately instructed to consider the receipt of workmen's compensation benefits, to deduct that amount from the total damages sustained by Tucker, and thus arrive at their verdict. Jury instruction No. 48 provided: "You cannot award damages for those *items of expense* incurred by the plaintiffs which have been paid for by someone other than the plaintiffs." (Emphasis supplied.) It is clear that a large percentage of the workmen's compensation benefits paid to James

---

3. Assuming, but not deciding, that the entire *Associated* rationale is correct, the workmen's compensation benefits paid here to date of trial were approximately $16,000.00 Applying Feed Services 30% negligence to the $350,000.00 total verdict would result in a figure of $105,-

000.00 Since that amount by far exceeds the workmen's compensation benefits, under the *Associated* rationale, Feed Services would not be entitled to subrogation until the workmen's compensation benefits reached $105,000.00.

Tucker related to permanent disability to his eyes and were not "items of expense." We hold that the jury instruction here does not adequately safeguard against a double recovery to the Tuckers. Therefore, we remand this case to the trial court solely for a reduction of the judgment by the amount of the workmen's compensation benefits received by Tucker. Since that said instruction was erroneous, the Tuckers may decline to accept that reduction in the judgment, and in that event, the district court is directed to grant a new trial solely on the issues of damages. In the event that the plaintiffs shall accept the reduced judgment, the interest thereon shall be computed at the rate of eight per cent from the date of the original judgment, June 1, 1976.

The cause is remanded to the trial court for further proceedings consistent herewith. No costs allowed.

DONALDSON, C. J., McFADDEN, J., and SCOGGIN, J. Pro Tem, concur.

BISTLINE, Justice, dissenting.

The judgment should be affirmed.

### I.

On June 25, 1976, after the trial and following the jury's assessment of fault and damages, the trial court conducted a hearing on post-judgment motions; the record includes a transcript of that proceeding. Counsel for Collier Carbon and Chemical there emphasized its contention that the judgment against it should be reduced, citing *Liberty Mutual v. Adams*, 91 Idaho 151, 417 P.2d 417 (1966). At the same time Collier Carbon and Chemical argued that although a negligent employer could not recover, a prohibition against a double recovery to the injured workman necessitates "that then the Court automatically reduces the amount of the Plaintiff's recovery by the amount of compensation paid or to be paid."

From the record of June 25, 1976, and from a reading of the transcript of the instructions conference, it appears that the jury was allowed to be informed and instructed as to some compensation benefits which Tucker had received, and apparently Collier Carbon acquiesced in the procedure. If it found fault in given instruction no. 24, the record is devoid of any request of Collier Carbon and Chemical for what it considered to be a more accurate instruction. In that situation it is not in a position to complain on appeal of the inadequacy of the court's instruction, nor is it proper that the judgment be modified for any imperfection in that instruction.

Likewise its contention, made after verdict, that the court, not the jury, should assume the responsibility for modifying the judgment came too late.

All in all, Collier Carbon and Chemical fails to sustain its burden of showing the commission of prejudicial error on the part of the trial court. Collier Carbon and Chemical made no request that the jury itemize or segregate the various items of damages which were allowed and it cannot be said from the record presented that industrial insurance payments received by Tucker were not deducted by the jury in setting the total of damages recoverable.

### II.

I do, however, agree with Collier Carbon and Chemical's contention that any modification of the judgment, if proper, should be for the trial court. It can only be confusing to the jury to hear evidence of payment of industrial accident insurance benefits, and this case of all cases was complex enough without the interjection of extraneous matters. *Lebak v. Nelson*, 62 Idaho 96, 107 P.2d 1054 (1940) convinces me that although an employer-surety may bring the action against the third party whose negligence has allegedly caused the employee's injury, he should do so much as a guardian ad litem or next friend brings an action, and the jury should not be given any concern whatever as to any proceedings under the Workmen's Compensation Act. The jury should be concerned only with the usual issues of negligence, causation, and damages. Although I see nothing inherently wrong in the final paragraph of the *Lebak* opinion on

# 606

page 120, 107 P.2d 1054, to my mind it would seem better that the jury be told nothing in that regard either. In short, all evidence of industrial accident insurance should better be kept out of the jury's considerations. In a case such as the one at bench, when the jury has resolved the issues which are properly for a jury to resolve, if damages are awarded against the third-party defendant, or defendants, the trial court in entering judgment should at that time protect the rights of those having an interest in the judgment which, of course, would include a subrogated non-negligent employer-surety.[1]

If the employer has been found negligent, however, then, if proper under the decision-law of this jurisdiction, the amount of compensation benefits paid should be deducted from the verdict or judgment. This, however, is certainly a windfall to the third-party tortfeasor, and is a result this Court should not allow, as hereafter discussed.

## III.

While I concur with the major holdings of the Court's opinion, I am persuaded that this Court should not blindly accept the unfortunate "no double recovery" language of *Witt* as a basis for a new rule of law that an injured employee's damages awarded against a third-party tortfeasor must in all instances be reduced by the amount of workmen's compensation he has received. The Court did not do so in *Liberty Mutual Insurance Company v. Adams*, 91 Idaho 151, 417 P.2d 417 (1966), where *Witt* was first considered and applied, but on the contrary did allow the employee a "double recovery" —a loosely used term which is quite at odds with reality.

The sole issue in *Liberty Mutual* was whether a negligent employer, whose negligence along with that of a third party pro-

duced the injury, could obtain from an injured employee reimbursement of workmen's compensation benefits paid, the employee having recovered from the third party in a negligence action for damages. The Court answered in the negative, holding that the negligent employer and its surety Liberty Mutual could not so recover. The so-called "double recovery" remained with the injured employee.

While it is correct that the Court in *Liberty Mutual* relied upon *Witt* for the proposition stated at page 156 of 91 Idaho, at page 422 of 417 P.2d,[2] the Court *did not* at all adopt, approve, or even mention the further statement of *Witt* that a reduction of the employee's damages awarded in a suit against the third-party tortfeasor must be made so as to avoid the allowance of a double recovery. *Witt*, 17 Cal.Rptr. at 378, 366 P.2d at 650. Moreover, on many readings of *Witt* I remain unable to find in that opinion anything whatever substantiating that statement. It was a mere unreasoned gratuity which the court apparently made in distinguishing the facts in *Witt* from the facts in *Baugh v. Rogers*, 24 Cal.2d 200, 148 P.2d 633 (1944), discussed in *Witt*, 17 Cal. Rptr. at 377–378, 366 P.2d at 649–50.

On page 377 of 17 Cal.Rptr. on page 649 of 366 P.2d *Witt* states that "North Carolina * * * holds that the third party is entitled to have the judgment against him reduced by the amount of compensation paid to the injured employee if he can prove that the concurrent negligence of the employer contributed to the injuries suffered by the employee." The *Witt* opinion cites *Essick v. City of Lexington*, 233 N.C. 600, 65 S.E.2d 220 (1951) and *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E.2d 886 (1953), which cases Justice Taylor thirteen years earlier saw as standing for the following proposition:

> tortfeasor should be able to invoke the concurrent negligence of the employer to defeat *its* right to reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee.'" (my emphasis)

1. On page 609, *infra*, is a short discussion of the procedure used in North Carolina from which state the Court, via *Witt*, adopted our rule that the non-negligent employer may not recover benefits paid.

2. " 'Thus, whether an action is brought by the employer or the employee, the third party

"In other words, where independent negligence on the part of the employer contributes to, or combines with, the negligence of the defendant to cause the injury, and where the employer and the third party defendant are not joint tort-feasors, but are severally liable as independent tort-feasors, and the negligence of the employer is not merely such as is imputed to him from negligence of the injured employee, the employer's negligence is a pro tanto defense available to the third party."

*Brown v. Arrington Construction Co.*, 74 Idaho 338, 359, 262 P.2d 789, 803 (1953), (Taylor, J., dissenting).

A reading of the North Carolina cases convinces me that Justice Taylor correctly read those cases, the rationale of which is not in any way premised upon guarding against an employee obtaining a double recovery, but on the entirely different ground that it is the employer who can recoup nothing:

"It is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer. *Brown v. Southern R. R.*, supra. [204 N.C. 668, 169 S.E. 419] For this reason, where the negligence of the third party and independent negligence on the part of the employer concur and proximately cause the injury to the employee, the third party may plead and prove the independent concurring negligence of the employer as a bar, *pro tanto*, to the recovery of the compensation paid or payable by the employer or the insurance carrier."

*Lovette*, 73 S.E.2d at 891–892.

Recognition must be given to the fact that the statutory scheme since its enactment in 1917 gave the employer subrogation rights. This, however, has nothing to do with the question of whether an employee who obtains industrial accident insurance

compensation and thereafter successfully maintains a negligence action against a third-party tortfeasor is somehow gaining a "double recovery." It illustrates only a disposition on the part of the legislature to favor the employer (in reality the employer's surety) by affording an opportunity to come out harmless—notwithstanding that the injured employee's claim for compensation benefits may have been vigorously resisted. It becomes necessary to pause and reflect upon what had happened in 1917.

The enactment of Idaho's Workmen's Compensation Law took away the right of a workman in Idaho to seek damages for injuries occasioned by the negligence of his employer, and in return he was provided specific compensation, which until recently has been totally inadequate, and now is just barely adequate. The legislative scheme was to accomplish this through a "no-fault" insurance program, where the compensation awards would be made by insurance companies who would in turn accept premiums in return for assuming the risks of loss. The legislature, if it considered that the employee might receive from his employer some sum of money with which to purchase such workmen's insurance and pay the premium, instead directed the employers to procure the insurance and pay the premium. The working man, having involuntarily lost his common law cause of action for injury, became the beneficiary of these policies of industrial accident insurance.[3] The legislature perceived that it was not only wise that the working man not be entrusted with purchasing his own industrial compensation coverage, but that he should pay back what benefits he received if he was able to effect a recovery from a third-party tortfeasor. This payback was never said to be, however, on the theory that a working man should not be able to collect both insurance benefits and damages occasioned him by the third-party tortfeasor—but on the more

---

3. As stated by the dissent in *Edmonds v. Compagnie General Transatlantique,* 443 U.S. 256, 280, 99 S.Ct. 2753, 2766, 61 L.Ed.2d 521 (1979) (Blackman, J., dissenting): "The award of less than full damages is the *quid pro quo* for the guarantee of recovery without regard to the

employer's fault." As to "quid pro quo" generally in such situations, see *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), cert. denied 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

readily acceptable and less obvious theory, well known in the insurance industry, that an insurance company which has paid benefits always wants to be subrogated to the employee's rights to the extent of payments made. The Idaho legislature, as with others, so arranged it. In no instance did the legislatures of any of the states including Idaho consider that such subrogation provisions indiscriminately awarded subrogation rights to negligent as well as to non-negligent employers. All of which is to say that "double recovery" was not involved, and is still not involved. Double recovery is involved where a person injured collects *damages* twice. Where a person's injury is caused by two or more joint and several tortfeasors it has ever been the law that a satisfied judgment against any of those responsible is a bar to a second action against the others. Damages, of course, are no part of the Workmen's Compensation Law. Damages for tort are supposed to justly compensate the victim—make him whole as it were. It has never been pretended that specified compensation under the Workmen's Compensation Law even approaches making the injured worker whole. In fact, the major underlying premise of the Workmen's Compensation Law is to take from the working man his common law right to sue in tort for damages, and relegate him to the status of an insured under a policy which picks up his medical expenses, gives him a modest weekly stipend while he mends, and an equally modest specific award for the permanent injury. Such does not amount to damages. Payments received from industrial insurance should not be regarded any differently than payments which an injured workman receives from a health and accident policy which he has purchased full well knowing of the inadequacy of industrial insurance. Such payments are insurance benefits, and in no sense are they damages for tort.

4. Apparently it is still the law that a non-negligent employer may retrieve the benefits which he has paid to the injured employee. That we one day may see a constitutional challenge to such a provision is suggested to my mind by

In this particular action the issue is basically the same as it was in *Liberty Mutual*, other than for the alignment of parties. In *Liberty Mutual* it was the employer who sought reimbursement from the injured employee under the subrogation provisions of the Workmen's Compensation Act. This Court held there that a negligent employer could not successfully assert the subrogation rights which the statute purported to give.[4] The holding of that case would also require that the trial court deduct from a damage award in a negligence action against a third party any portion thereof upon which the employee's employer had an *enforceable* claim under the subrogation provision. A non-negligent employer at the present time has an enforceable claim. A negligent employer does not. Hence the trial court here was not required to make any deduction from the jury's damage award, the jury having found negligence on the part of Tucker's employer. As was well pointed out by Justice McFadden in *Liberty Mutual*, the legal theory is that "[i]t is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer." 91 Idaho at 156, 417 P.2d at 422, citing *Lovette* language as adopted in *Witt*.

Prior to the Court's decision in *Liberty Mutual*, thus from 1917 until 1966, Idaho was in line with 48 other states which made full obeisance to the subrogation provisions notwithstanding the employer's negligence. The Court in *Liberty Mutual* quoted the history detailing the reasons given for the past successes of negligent employers and their sureties:

"Most of these cases have reasoned that the employer should be able to get reimbursement from the third party tortfeasor despite his own concurrent negligence because the relevant Workmen's Compensation Act did not expressly preclude his recovery. Others have reasoned that the employer's rights against the

our holding in *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), cert. denied 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

third party are precisely the same as the rights of the employee; since the employee is not barred, neither is the employer." *Liberty Mutual*, 91 Idaho at 156, 417 P.2d at 422, quoting *Witt.*

In *Liberty Mutual* the negligent employer contended that this Court should accept *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952) as controlling. The contention was rejected, 91 Idaho p. 156, 417 P.2d 417, but the Court noted in citing *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), that the court there: " . . . allowed reimbursement from a stevedoring company by the steamship company for damages the steamship company paid an injured employee of the stevedoring company even without a specific indemnity agreement." *Liberty Mutual*, 91 Idaho at 157, 417 P.2d at 423.

Some understanding of the federal cases is found in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), where the High Court explains that the stevedore-employer is by federal statute given either a lien or an assignment of the injured longshoreman's rights against a third party by the operation of the administrative order granting compensation benefits. Such is similar to the subrogation provisions of our Idaho Act. As the dissent in *Edmonds* points out, the negligent employer (stevedore), on the employee's winning a judgment against the ship owner, who "was 70% at fault, will recoup its statutory compensation payments out of the damages . . . and thus will go scot-free." *Id.*, 99 S.Ct. at 2764, (Blackmun, J., dissenting).

As I mention above, *Liberty Mutual* placed Idaho with a small minority, including California and North Carolina. Nevertheless, it is a sound position from which no retreat should be made. Our statutory law, interfaced with court-made law, does not allow a negligent employer and its surety to go scot-free. But that is not the end of it. It would be a travesty indeed to hold that the disqualification of the negligent employer should somehow inure to the benefit of the negligent third-party tortfeasor. I neither know of nor can divine any principle of law which requires that an injured employee must to the extent of payments received elsewhere suffer a reduction of the tort damages he has obtained against a negligent third-party tortfeasor. A question of double recovery it is not. While the tortfeasor, or tortfeasors, should not be required to pay damages twice for the same injury, he or they should not be given the benefit of payments to the injured person which he or they did not make. This is the collateral source doctrine.

In *Lovette v. Lloyd, supra*, from whence came the teachings of *Witt*, and, in turn, *Liberty Mutual*, it is spelled out that the statute requires that in an action against a third party the jury "is to declare the full amount of damages suffered by the employee on account of his injury, notwithstanding any award or payment of compensation to him under the provisions of the Workmen's Compensation Act."[5] Evidence of compensation paid, or to which the employee or his dependents may be entitled, is inadmissible. The trial court then enters a "judgment safeguarding the rights of any person entitled to share in the recovery, regardless of whether or not such person is a party to the action." *Lovette*, 73 S.E.2d at 891.

A jury fixed the damages due the Tuckers. Tucker's employer is disqualified from

---

5. 73 S.E.2d at 891. In *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 2761, 61 L.Ed.2d 521 (1979), the Supreme Court stated the same concept was applicable:

"Congress clearly contemplated that the employee be free to sue the third-party vessel, to prove negligence and causation on the vessel's part, and to have the total damages set by the court or jury without regard to the

benefits he has received or to which he may be entitled under the Act. Furthermore, under the traditional rule, the employee may recover from the ship the entire amount of the damages so determined."

The only distinction is that in Idaho, since *Liberty Mutual*, the negligent employer may not have reimbursement; not against the employee, nor against the third party.

enforcing any claim to reimbursement and is not entitled to share in their judgment. In no way can it logically be said that Collier Carbon and Chemical is entitled to a reduction of the judgment on the basis of industrial insurance benefits of which they were not the source. It would be indeed an anomaly of our case law for the Court to now hold that Tucker's damages must be reduced, whereas in *Liberty Mutual* the employee's damage settlement was allowed to remain intact—thus making the result depend upon the slim thread of whether the negligence action went to judgment, or was settled.

Had the Tuckers settled their damage action for $325,800.00, Tucker's negligent employer under the holding of *Liberty Mutual* could not recover from Tucker or from Collier Carbon and Chemical any compensation payments paid to Tucker.

In a converse situation, *Shields v. Wyeth Laboratories, Inc.*, 95 Idaho 572, 513 P.2d 404 (1973), a settlement was made of the injured employee's third party negligence claim. Thereafter the employee sought an industrial insurance award for his permanent disability, and was awarded total disability compensation. The commission's view of I.C. § 72–204 was that the circumstances in that case did not require credit to the employer-surety to the extent of the damage settlement. This Court held otherwise. The significant language of the opinion as pertinent here was the passage quoted from Larson, Vol. 2, § 71.20, reading in part as to "double recovery":

"'It is equally elementary that the claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess. This is fair to everyone concerned; the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct,

since to reduce his burden because of the relation between the employer and the employee would be a windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.'"

*Shields*, 95 Idaho at 573–574, 513 P.2d at 405–406.

Of particular interest to the case at bench from the foregoing passage is the thought that disallowance of "double recovery" is "fair to everyone concerned" because the neutral-in-a-fault sense employer comes out even, and a reduction of the damages to the third party is a windfall which he has done nothing to deserve. In Idaho, of course, North Carolina and California—and apparently unlike the other 47 states—we do not recognize any such neutrality on the part of a *negligent* employer. A negligent employer may not recover either against his employee or against the third party.

Left to stand, however, and as it should be, is the philosophy there expressed that the third party should not receive a windfall which he has done nothing to deserve. All paths lead to the same conclusion. We have held that a negligent employer cannot recover either from his employee or the third party, and we have agreed that it is not conceptually right that the third party escape from paying damages. In that regard we are fortified by consideration of the collateral source doctrine. In respect to that we should be aware that the so-called "double recovery" doctrine is not in any way the same as the prohibition against a party recovering *double damages*. So considered, then, there is no reason for allowing Collier Carbon and Chemical a reduction in the Tuckers' judgment. If it is thought to be inequitable that the injured employee have the benefit of this so-called double recovery, as against the third party having it, the language of Justice White in *Edmonds v. Compagnie, supra*, 99 S.Ct. at 2762 is appropriate: "Some inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should

not presume that Congress intended to place the burden of the inequity on the longshoreman whom the Act seeks to protect."

California has retreated substantially from the "no double recovery" rule with which that court saddled itself in *Witt.* It now has what might be called a "point-in-time" application, holding that where the employer is also negligent, the third-party tortfeasor may have a reduction of the judgment against him as to amount of temporary compensation paid prior to judgment, but that the employer and the surety may not by reason of the judgment have any credit as to compensation awards which are made *after* the judgment. *Roe v. Workmen's Compensation Appeals Board,* 12 Cal.3d 884, 117 Cal.Rptr. 683, 528 P.2d 771 (1974). If there is any logic in that holding, it presently is difficult to find. The court there specifically concedes that "[t]he policy against double recovery primarily protects the third-party tortfeasor, not the employer." *Id.,* 117 Cal.Rptr. at 687, 528 P.2d at 775.

Unanswered by the California court is why the third party is entitled to any such protection. As pointed out above, in *Shields v. Wyeth Laboratories* this Court recognized that no reason exists why the third party should be given a windfall which he has done nothing to deserve. The philosophy of the California court runs contra to ours. Primarily that court was trying to resolve a conflict between two of the intermediate courts on the proper application of *Witt,* and its "no double-recovery" rule coupled with its decision precluding a negligent employee to profit by his own wrong, *Nelsen v. Workmen's Compensation Appeals Board,* 11 Cal.App.3d 472, 89 Cal. Rptr. 638 (1970) and *Corley v. Workmen's Compensation Appeals Board,* 22 Cal. App.3d 447, 99 Cal.Rptr. 242 (1971). The latter was a split decision with Justice Kerrigan dissenting, and in essence casting his vote with the rationale of the *Nelsen* court.

The California Supreme Court went with the rationale of *Nelsen,* making the language of Justice Kerrigan highly appropriate to our problem with the Idaho case now at bench. Speaking of the now discredited majority opinion in *Corley v. Workmen's Compensation Board,* he wrote:

"In a tortured analysis of *Witt* and its progeny, the majority has emasculated the rule barring monetary recovery by a negligent employer. The majority decision rests upon a single sentence in the landmark case to the effect that an employee may not be allowed double recovery. (*Witt v. Jackson,* 57 Cal.2d 57, 73, 17 Cal.Rptr. 369, 366 P.2d 641.) With its obsession against double recovery, the majority completely ignores the real thrust and import of *Witt* which was that under no circumstances should a concurrently negligent employer benefit by his own wrong. (*Ibid.,* pp. 71–73, 17 Cal. Rptr. 369, 366 P.2d 641.) My view of the policy reasons underlying *Witt* finds support in the decision itself (*Ibid.,* pp. 71, 72, 17 Cal.Rptr. 369, 377, 366 P.2d 641, 649), in that the Supreme Court invoked with approval language employed in two North Carolina cases to the effect the employer's 'hands ought not to have the blood of the dead or injured workman upon them . . . .' (*Brown v. Southern Ry. Co.,* 204 N.C. 668, 169 S.E. 419) and '[I]t is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer.' (*Lovette v. Lloyd,* 236 N.C. 663, 73 S.E.2d 886, 892).

"By closing their eyes to the crucial policy factor underlying *Witt,* and in allowing the negligent employer herein to retain the amount of the settlement derived from the third party tortfeasor and further granting him a credit in the amount of the employee's net recovery, the majority have reached the appalling result that the employer derives a profit for an injury to the employee caused by the employer's own negligence.

"Even assuming that the majority's passionate concern with the possibility of a double recovery is somehow tenable, the simple fact of the matter is that 'double recovery' is a misnomer in terminology as well as a rarity in actuality, if it exists at

all. Anyone experienced in workmen's compensation law knows that the benefits awarded an injured workman are nominal, not compensatory. Similarly, personal injury lawyers recognize that damage awards seldom, if ever, fully compensate an injured employee for all detriment sustained by him."

*Corley*, 99 Cal.Rptr. at 253 (Kerrigan, J., dissenting).

His closing language is particularly realistic and refreshing. To it should also be added that in many instances in the Idaho practice the working man has been required to pay an attorney one-third of the benefits which he ultimately realizes. When he pursues a third-party defendant, again and nearly in all instances he has to pay an attorney one-third of the recovery which he realizes. With that in mind any worry about the inequity of a working man's "double recovery" quickly evaporates.

Finally, I mention that according to Larson's work, it is only the courts of California, North Carolina, and Idaho which have made decision-law modifying the statutory law of those respective states so as to recognize a distinction between a non-negligent and negligent employer, the latter being precluded from profiting by his own wrong. Neither the courts nor the legislatures of other states have done so.

The issue which we decide today we must decide for ourselves; outside help is mainly confusing. For my part I have not seen any principle of law or justice which here should require a reduction of the judgment.

Also, I am not fully persuaded that the Court should adopt the reasoning and holding of *Associated Construction & Engineering Company v. Workers' Compensation Appeals Board*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978), a four-to-three decision of the California Supreme Court, wherein that court found it necessary to modify both *Roe, supra*, then in only its third year of infancy, and modify its then recent holding in *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). Suggesting some caution, I mention that Justice Clark joined the majority, in

fact made up a majority, only under the compulsion of *Li*, together with a 1978 trilogy of California cases set forth in 150 Cal. Rptr. at 899, 587 P.2d at 695; a full reading of the divergent opinions in each I comment to the bench and bar alike. Justice Jefferson in dissent deals extensively with the shortcomings of *Associated*, touching upon the very points with which I feel concern, foremost of which is a visitation upon the Industrial Accident Commission of an obligation to hear and determine issues of comparative negligence.

A clear-cut principle of law evolved from the Court's unanimous holding in *Liberty Mutual*; by virtue of that decision the statutory law was modified to prevent a negligent employer from recovering back compensation payments whether it might attempt to do so from the injured employee or the negligent third party. Today the issue is presented in a slightly different context—with the negligent third party wanting the benefit of those payments which the negligent employer by virtue of *Liberty Mutual* may not regain. The answer should be exactly the same as it was in *Liberty Mutual* and as forecast by the Court's language in the non-negligent employer case of *Shields v. Wyeth*. A so-called balancing of the equities does not require that the negligent third-party tortfeasor be given the windfall apples which have fallen from the tree of the negligent employer.

"It is of significance that, in the case at bench, we are not really talking about the rights and obligations between an employer and third party directly. On the contrary, we are deciding the rights and obligations between an employer's insurance carrier and a third party's insurance carrier. Each insurance company has been paid premiums for undertaking the risks involved. It is neither the employer nor the third party who suffers by virtue of any shifting between the insurance carriers of the responsibility for specified percentages of the damages suffered by the injured employee. Most employers are business entities. The cost of insur-

ance premiums is a cost of doing business which is passed on to the customers of the business. Most third-party tortfeasors are also business entities in which the cost of insurance premiums represent part of the cost of doing business that is paid for by the customers of these entities. Thus, the amount of damages to the injured employee that is paid by the insurance carriers for the employee and the third party is in reality financed by the customers of the employer and the third party. The costs of the awards to injured workers are spread, therefore, among a substantial segment of society."

*Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board,* 22 Cal.3d 829, 150 Cal.Rptr. 888, 909, 587 P.2d 684, 705 (1978) (Jefferson, J., dissenting).

A majority vote of the Court membership is, of course, sufficient to change the law. Although *Liberty Mutual v. Adams* antedated my time on the Court, it was in my opinion a well written opinion, joined in by a unanimous Court, and soundly bottomed on the proposition that in this state no one should profit by his own wrong.

Unfortunately it was destined to a short life, and I am saddened to observe its demise. I more deeply regret that it is laid to rest without the comfort of any epitaph appropriately recognizing that it has now been overruled. Perhaps solace may be found that Idaho is now brought back into line with a clear majority of forty-eight other states which prefer to talk in terms of "double recovery" to the end that, where a so-called windfall is to be had, the worker in Idaho must give way either to the negligent employer or to the negligent third person.

Wherein the Court now indulges in fiction of "double recovery," to the detriment of the working man, my vote would be for awarding that which is denied him to his employer—only for the simple reason that the employer is the only certain source of some award to the injured employee.